BERTINE and wife *vs.* VARIAN and COUTANT, administrators of VARIAN, deceased, and ANDERSON.

———

The statute of limitations does not, in terms, apply to chancery, still, when its jurisdiction is invoked in cases of which it has not an exclusive, but a concurrent jurisdiction, equity gives to it the like effect as a court of law.

Silence of parties for several years raises a presumption of satisfaction.

Calling for accounts is not to be encouraged after the death of the accounting party, provided he lived long enough to have accounted and there was no impediment.

Therefore, where a bill was filed against one guardian and the administrator of another to account, eleven years after one of the wards came of age and eight years as to the other : *It was held,* that the complaint must be dismissed, with costs.

Ignorance of rights, and fraud and concealment will prevent the operation of the statute ; but a party must set these up distinctly in his pleading. An averment, that the complainants had not been " in a situation to call the guar- " dians or their representatives to an account" is too indefinite.

———

THIS was a bill calling upon a guardian and the administrator of another guardian to account.

The facts were these :—

In February, one thousand seven hundred and ninety-five, Isaac Varian and James Anderson were appointed, by the court of Chancery, guardians of the persons and estates of John Forrester and Gertrude Forrester, who were infants; the former was then about seven years of age, and the latter nearly four years old.

These children were entitled to a considerable personal estate under the will of their mother Gertrude Harris, who died in the month of November one thousand seven hundred and ninety-four; and were also entitled to some money arising from the estate of their grandfather, John De Witt. The guardianship ceased as to John Forrester in one thousand eight hundred and nine, by his attaining the age of twenty-one years. He died; and the complainant, Bertine, became his administra-

*April 24,*
1832.

*Guardians
accounts.
Statute of li-
mitations.*

tor. Gertrude Forrester arrived at full age in the year one thousand eight hundred and twelve, when the guardianship ceased as to her. She remained single twelve years afterwards; and then, in one thousand eight hundred and twenty four, married the complainant, Bertine. Isaac Varian, one of the guardians, died in the year one thousand eight hundred and twenty. He left a large real and personal estate ; and the defendants, Varian and Coutant, were the administrators of his estate.

The bill was filed in the year one thousand eight hundred and twenty-nine by the complainants, Bertine and wife, in her right, and by the former in the capacity of administrator of the brother John Forrester. It called upon the administrators of Isaac Varian, in conjunction with James Anderson, the other guardian, to account for the estates of the wards which came to their hands or to the hands of either of them. The property to which the children were entitled from Gertrude Harris and John De Witt, came, as it was alleged, into the hands of Isaac Varian, as acting guardian, soon after his appointment.

Neither the time when John Forrester died nor when letters of administration were taken out to his estate, appeared upon the pleadings or in the proofs.

Mr. *W. Silliman,* was of counsel for the complainants.

Mr. *James Smith,* appeared for the defendants.

*September* 3.    THE VICE-CHANCELLOR. The cause has been heard upon the pleadings and proofs between the complainants and the administrators of Varian; and the only question to be considered at present is, whether the defendants are protected by the lapse of time or the staleness of demand from liability to account ?

These defendants, by their answer, claim the benefit of the statute of limitations or of the equitable bar arising from the lapse of time, in the same manner as if it had been pleaded. ·

The whole doctrine bearing upon the question here presented underwent an examination in *Kane* v. *Bloodgood,* 7 *Johnson's*

*Ch. R.* 90; and the clear and able opinion there given, which, so far as it was appealed from, was affirmed by the court of errors, (see 8 Cowen, 360,) must be regarded as establishing principles governing the present case.

The statute of limitations does not, in terms, apply to a court of equity; but this court has always been considered within the spirit and meaning of the statute, in respect to cases analogous to those at law, and where, from the inadequacy of the remedy afforded by the courts of law, the jurisdiction of a court of equity has been invoked to supply the defect. In this respect, equity follows the law, and acts not merely by analogy, but, in obedience to the statute: *Hovenden* v. *Lord Annesley,* 2 *Sch. & L.* 630, 631.

Hence, the statute could always be pleaded or set up in bar in a court of equity, as well as at law. There is a material distinction, however, as to the cases to which the statute does or does not apply, and it is the application founded on that distinction, which, I apprehend, creates all the difficulty at the present day.

Chancellor *Kent* remarked, in *Kane* v. *Bloodgood,* that the great and marked exception to the ordinary application of the statute to equity cases, exists in the matter of trusts falling exclusively within equity jurisdiction; and the rule which he has deduced from a review of all the decisions is undoubtedly the correct one: that the trusts not to be reached or affected by the statute are, those technical and continuing trusts which are not cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of this court. On the other hand, the position is equally true, that if there be a concurrent jurisdiction between courts of common law and of equity, and, instead of proceeding at law, the party resorts to equity, that is to say, if, instead of bringing an action of account, detinue, or case for money had and received, he files his bill for an account, the same period of time that would bar him at law, will bar him in equity. This principle, he observes, pervades all the cases.

Chief Justice *Spencer,* in *Murray* v. *Coster,* 20 *John. R.* 585, held the same language and laid down the same principle in his own clear and forcible manner; and so just has it been

deemed, that it is now an express part of a legislative enact-
ment: (2 R. S. 301.)

This being established, it remains to be seen, whether the
claim in question is to be classed among the trusts falling ex-
clusively within equity jurisdiction or whether a concurrent
remedy existed at law?

There can be no doubt on the point; for, although the ap-
pointment of these guardians was made by this court, and its
power and jurisdiction over them for any breach of trust might
have been exercised at any time during the minority of the
wards, upon petition or bill, or, after they came of age by bill
exhibited for an account, it is equally certain that, as the wards
respectively attained the age of twenty-one years, they could
have proceeded, by action of account, against their guardians
in a court of law, if the guardians omitted or refused to render
fair accounts or to come to a just settlement with them. This
common law remedy, by action of account, they had a perfect
right to on the determination of the guardianship: *Co. Litt.*
89:a 2 *Kent's Com.* 188.

The action of account against a guardian is, likewise, ex-
pressly recognized and confirmed by the statute for improving
that remedy, passed as early as the year one thousand seven
hundred and eighty-eight, and which has ever since remained
a law of this State, (*vide* 1 Revised Laws of 1813 p. 90,) and the
statute of limitations expressly mentions the action of account
as one of those which shall be commenced within six years
after the cause of such action accrues.

Here, we have a case in which there was a perfect remedy
at law, concurrent with the equitable one now attempted to be
enforced, but which the parties omitted to pursue after the
disability of infancy was removed and until more than the time
for bringing an action at law had elapsed. From the time of
John Forrester's coming of age, when his right of action ac-
crued, to the death of Isaac Varian, one of the guardians,
is a period of eleven years; and in the case of Gertrude,
one of the complainants, it is about eight years—and during
which time no steps were taken to call him to an account.
And, after his death, about nine years more were suffered to

1832.

BERTINE
v.
VARIAN.

elapse before this suit was instituted against his representatives; four years of which latter period Gertrude was also free from the disability of coverture. Under these circumstances, I think this court is bound to yield the same obedience to the statute as a court of law, and to hold the complainants barred of their right to an account by the lapse of time.

If parties have just claims, they must be more diligent in asserting them. To compel the administrators, at this late day, to go into an account, in the absence of all evidence to make out their discharge, might be doing great injustice to the estate they represent; for, they aver in their answer, that no books, accounts or vouchers have come to their hands or been discovered by them among the papers of their intestate, relating to these persons or their property. The silence of the parties for so many years raises a presumption that the claim has been satisfied. Perhaps the delay in making the demand has, of itself, occasioned the loss or destruction of the vouchers. It is, therefore, better that they who have so long slept upon their rights, if any they really have, should be deprived of them, than that the possibility of doing wrong to the other parties should be hazarded. Besides, calling for accounts is not to be encouraged after the death of the accounting party, provided there was time enough after his liability accrued, and no impediment in the way. As was well remarked by Sir *Thomas Plumer*, M. R. in *Chalmers* v. *Bradley*, 1 *Jac. & W.* 63, public policy requires that persons should not lie by and call for accounts at a distant period, when the accounting party is dead, vouchers are lost, and the memory of witnesses is gone.

But, it is said in argument, that the wards were ignorant of their rights when they came of age and ought not to be prejudiced by the delay; and that an enquiry ought to be directed into circumstances before the master, showing their ignorance and also fraud and concealment on the part of the guardians, so that the complainants may have an opportunity, on those grounds, of rebutting the presumption, arising from the lapse of time. Such facts, whenever they exist, are sufficient to prevent the operation of the statute in the view of a court of equity; but, the parties should lay a foundation for proofs of

that kind, by proper charges or allegations in the bill. None such are contained in the pleading before me. The complainants merely allege, that during the principal part of the time, since the appointment of the guardians, the complainant, Gertrude, and her brother John Forrester, have not been in a situation to call the guardians or their representatives to an account in respect to the guardianship. This is too indefinite, and leaves us to infer that it was only during infancy that they were in a situation not to call for an account. In *Chalmers* v. *Bradley*, mentioned before, and to which I have been referred as an authority for directing a special enquiry into circumstances before the master, there was an express allegation in the bill, by way of accounting for the great delay, that the plaintiff had been in ignorance and had only recently discovered the facts; and even there, the M. R. evidently gave the direction with great caution.

As the complainants have not framed their bill so as to admit of evidence to rebut the presumption, I cannot direct the reference.

The result of my opinion is, that the complainant's bill must be dismissed as to the defendant's Varian and Coutant, the administrators of Isaac Varian deceased, with costs.