NEW-YORK,
May, 1832.

## T. & C. Dewey *vs.* Bordwell.

Dewey
v.
Bordwell.

A *lessee* of a farm, who fixes a boundary line between himself and his neighbor, is so far estopped from shewing that such line was erroneously settled, that he cannot maintain *trespass* against his neighbor for taking and carrying away crops put in by him, upon the assumption that the line agreed upon between them was the true line.

On *appeal* from a justice's judgment, in an action of trespass *quare clausum fregit*, the defendant is not at liberty to shew title in himself when the plea put in by him before the justice is the general issue.

Where A. has been in possession of two farms for 40 years, and loses one of them in an action of ejectment, of which possession is delivered to the plaintiff in ejectment generally without specification of metes and bounds, in an action of trespass *quare clausum fregit* against A. for entering upon the farm lost by him, he is at liberty to shew that the *locus in quo* is a part of the farm still retained by him, and not a portion of the farm lost by him in the ejectment suit.

ERROR from the Washington common pleas. Bordwell sued T. Dewey and C. Dewey in a justice's court in an action of trespass *quare clausum fregit* and *de bonis asportatis.* The defendants pleaded the general issue. The plaintiff obtained judgment before the justice, and the defendants appealed to the Washington common pleas. On the trial in that court, the plaintiff produced the record of a recovery in an action of ejectment, a writ of possession under it, and proved that lot No. 61, in the Artillery patent, without, however, specifying metes or bounds, was delivered to the agent of the plaintiff in the ejectment suit, who, in April, 1826, leased lot No. 61 to the plaintiff. The defendant, T. Dewey, was at the time, and had been for 40 years before, in possession of lot No. 62, adjoining lot No. 61. The plaintiff procured a line to be run as the boundary between the two lots, and the defendants ploughed up to this line, and planted corn and potatoes. Before the corn and potatoes were harvested, the agent of the plaintiff in the ejectment suit caused the line between lots No. 61 and 62 to be run, which line so run extended farther than what had been claimed by Bordwell, and included 128 rods of land on which the defendants had planted corn and potatoes : notwithstanding such last survey, the defendants, T. Dewey and his

son C. Dewey, harvested the corn and dug the potatoes, and carried away the crops, and for so doing this action was brought. The defendants offered to shew *title* in themselves to the *locus in quo*, which the court adjudged could not be done under the plea of the *general issue*. The defendants then offered to prove that the *locus in quo* was a part of lot No. 62, which evidence was also rejected by the court, and the jury, under the charge of the court, gave a verdict for the plaintiff for $60 damages. The defendants sued out a writ of error.

*R. Weston,* for plaintiffs in error.

*S. Stevens,* for defendant in error.

*By the Court,* NELSON, J. The evidence offered by the defendants to shew *title* in themselves to the *locus in quo* was properly excluded. To avail themselves of such defence, they should have put in a *plea of title* before the justice, in pursuance of the 9th section of the fifty dollar act, *Laws of* 1824, *p.* 283. That section provides that on the plea of title being put in before the justice, and the suit again commenced before the common pleas, "the defendant shall plead only a justification by title," and if the plaintiff shall recover any damages, the defendant is liable to double costs. To permit the defendants on the *appeal* in this case to set up title as a defence, would establish a precedent by which this provision might always be evaded. It would in this case also be an infringement of the spirit of that provision of the $50 act, *p.* 296, § 38, which requires the cause to be tried upon the same pleadings on the appeal upon which it was tried before the justice. The pleadings there, precluded the question of title from being set up by the defendants.

The defendants offered to shew that they were, and had been for forty years, in possession of lot No. 62, and that the *locus in quo* was a part of it. This was objected to on the ground that the defendants could not give any evidence of title, and for that reason it was excluded by the court. In this the court erred ; the plaintiff shewed no actual possession of the land upon which the trespass was alleged to have been commit-

ted; he shewed a recovery in ejectment of lot No. 61, and a delivery of possession generally of that lot by the sheriff to his lessor, and that he took possession in pursuance thereof, and that the trespass was committed upon that lot. Now, it is clear, if the defendants had proved the trespass to have been committed on lot No. 62, they not only shewed the plaintiff out of the possession of the *locus in quo*, but shewed the alleged trespass on premises of which the plaintiff never pretended to be in possession. The object and tendency of the testimony were not to prove the defendant's title, but to disprove the plaintiff's possession. This point may be stated stronger in the case than it appeared before the court below; but as it stands in the case, it cannot be sustained.

But I am of opinion upon the merits that the plaintiff was not entitled to recover. The first survey of lot No. 61 was made early in the spring, before either party commenced his spring work. It does not distinctly appear that it was made at the instance of Mr. Lathrop, the agent of the plaintiff in the ejectment suit, but it does at least appear to have been made by the plaintiff in this suit. The division line was then run between these parties and a stake stuck to designate it. That line was recognized by the defendants as the true one, and they cultivated their land up to it, planting corn and potatoes; the plaintiff did the same. In the fall, just before the corn was cropt, a second survey is made by Mr. Lathrop; the first is ascertained to be erroneous, and the line is moved south so as to include the premises and crops in question. This is not a question between the owner and the defendants, but between the occupant who has taken upon himself to fix and designate the line of division between him and them, and which they have acknowledged; and it does seem to me, as between these parties, it would be a violation of the plainest principles of justice and law to permit him to reap the crops of the defendants by means of his own errors. *He*, at least, should be estopped from disputing his own boundary to the injury of the rights and property of the defendants. I do not mean to be understood as saying that the mistake in running the first line may not be corrected, if there was one, but that by running the first line, and designating it as the

division between the parties, the plaintiff thereby acknowledged the right of the defendants to cultivate up to it, and that conceding the right to correct the line, the crops put in under these circumstances belong to the defendants. To give them to the plaintiff would be allowing him to reap the advantage of his own mistakes, which would be a violation as well of law as justice.

Judgment reversed, with single costs, and. *venire de novo.*