### AKIONA *vs.* KOHALA SUGAR COMPANY.

#### EXCEPTIONS TO FINDINGS OF AUSTIN, J.

#### APRIL TERM, 1885.

#### JUDD, C. J.; McCULLY and AUSTIN, JJ.

A tenant, who has the right to remove fixtures, must do so before he quits possession.

Plaintiff having surrendered all claim to premises under a certain lease, and admitted that he was a tenant at will, cannot recover for a house built by him on the premises for which, under the lease, he was to be paid at the end of the term.

Decision of the Court below, holding that Defendant, a corporation, is estopped by acts of its manager and agent, reversed.

Austin, J., dissenting.

OPINION OF THE MAJORITY OF THE COURT, PER JUDD, C. J.

WE refer to the opinion of Mr. Justice Austin, below, for a statement of the essential facts of this case.

For reasons which will appear later we do not think it necessary to decide whether the defendant corporation was bound by the lease made by manager Johnson, or whether a ratification has been proved.

We think the rights of the parties in this case are to be determined by the instrument dated May 6, 1882, and called a "surrender." It was an agreement made in settlement of an action of ejectment brought by defendant against plaintiff for the possession of the premises in controversy. It recites that "whereas the said party of the second part has commenced a suit in ejectment against the said party of the first part to eject him from certain premises at said Kohala, the property of said party of the first part, which said premises are claimed by said party of the first part by virtue of a lease made to him by Henry Johnson, as manager of the Kohala Plantation, *the validity of which lease is denied by said party of the second part ;* now, therefore, the said party of the first part, in consideration of the discontinuance and withdrawal of said suit, doth hereby surrender the said lease and *relinquish all claim to said premises or any part thereof by reason of the said lease or by reason of any right or claim arising thereout or therefrom,* and doth hereby admit all of the claim of the plaintiff, the Kohala Sugar Company, in and to the premises, and that he, said party of the first part, is tenant at will only of the same, and at any and all times, on ten days' notice to quit, shall and will quit and surrender possession thereof to the said party of the second part, and will on demand pay up all arrears of rent and thereafter make payment of rent from time to time as demanded."

It seems to us that the above instrument released the Kohala Sugar Company from its obligation to pay for the building erected by Akiona. That right arose, if at all, from the Johnson lease, for it was the only contract existing between them. The suit in 'ejectment was brought since the corporation maintained that it was not bound by the Johnson lease. If it was brought because the rent had not been paid, as Mr. Chapin says, it is unlikely they would have allowed Akiona to remain on the land as a tenant at will paying the same rent. We think the effect of the whole testimony is that the object of the suit was to test the liability of the corporation on the Johnson lease.

Now, Akiona, in consideration of the withdrawal of the suit, not only "surrenders the lease" but relinquishes all claim to the premises on which stood the house which he had built, and therefore the house itself, "by reason of the lease or by reason of any right or claim arising thereout or therefrom." The right he claimed, that the company should pay for this house, was a right arising from the lease, and he relinquished it to the company as effectually as he relinquished his claim to possession of the land for the three months remaining of the unexpired term. We gather this intent of Akiona from the whole instrument.

We think that the effect of this instrument was to create new relations between the parties and cancel all claims which Akiona might have had by reason of the Johnson lease. Otherwise, why should the corporation have discontinued its suit ? The Johnson lease had nearly expired, and it could hardly be that the only consideration moving to the corporation was the recognition by Akiona that his tenancy for the next three months was at will, paying the same rent. We think it is a fair inference from the surrender that Akiona thought he could not hold the company bound by the Johnson lease or he would not have consented to relinquish his rights under it. It is unphilosophical to say in the face of the surrender of the lease signed by Akiona, which recites that the company disputed the validity of that lease, that it left in force and effect an important and valuable covenant moving to Akiona from the company.

We think that Akiona should be held to be where his written deed places him—a tenant at will of the company subject to ten days' notice.

But it is clear from the testimony that the company gave him the privilege of removing his building.

He had abundant time in which to do this. By all the authorities a tenant who has a right to remove his fixtures must do so before he quits possession.

Akiona cannot claim that he had not a reasonable time, for he stipulated that he would vacate the premises in ten days after notice to quit. We find no evidence that he attempted to move his

45

building.   Failing to exercise this privilege before his interest in the land expired, he could not do so afterward, because the right to possess the land and the fixtures as a part of the realty vested immediately in the landlord.

Taylor's Landlord and Tenant, Sec. 551.

The judgment below should be reversed and judgment now entered for the defendant.

*A. S. Hartwell*, for plaintiff.

*W. R. Castle*, for defendant.

Honolulu, May 26, 1885.

## DISSENTING OPINION OF AUSTIN, J.

In this case I refer to and adopt the opinion of the Court below, except in so far as the same may be added to or modified by what I now say.   Henry Johnson was the acting manager in charge of the defendant, owning a large sugar plantation, consisting of a mill for the manufacture of sugar, and many hundreds of acres of land situated at Kohala, Island of Hawaii.   The office of the corporation was at Honolulu, Island of Oahu.   Books of account were kept at the plantation, but its leading officers, including its President, Treasurer and Secretary, resided at Honolulu, and the corporation books were there kept.   Necessarily the practical business and working of the plantation was left in the hands of the manager.   The multifarious and extensive duties thereby devolving upon such an officer are well known.   Doubtless Henry Johnson, as such manager, was the general agent of the company.   See Story on Agency, Sections 17, 53.

The premises in question, prior to the three years' lease thereof, executed by Johnson to the plaintiff, had been occupied as a leasehold at $12 a month, the same rent as that agreed to be paid by said three years' lease.   Yearly reports of rents received at the plantation, including rents from Akiona, but not naming him, were sent to the corporation officers.   The land let was small ; the interests involved in the lease were unimportant for such a company, and were not unusual.   I think Johnson acted within the apparent scope of his authority, and that the lease was binding in favor of the plaintiff, who had no notice of any By-law requiring

the signature of the President and Secretary to written documents.

I refer to *Crowley vs. Genesee Mining Company*, 55 Cal., 273, where an important mining contract was executed by the President and Manager of a mining corporation whose company office was in San Francisco, far away. See also Story on Agency, Sec. 53. In that case the plaintiff recovered.

The right to recover all that the plaintiff asks here can also be sustained as of the nature of an estoppel *in pais*.

"If a man, supposing he has an absolute title to an estate, should build upon the land with the knowledge of the real owner, who should stand by and suffer the erection to proceed without giving any notice of his own claim, he would not be permitted to avail himself of such improvements without paying full compensation therefor."

I Story's Eq. Jur., Sec. 388.

The act of Johnson, who was in charge of the property of the corporation, in permitting Akiona to erect a house on the land, even though this might be in excess of his authority as manager of the plantation, was of such a character as would authorize the plaintiff, ignorant of the By-law, to believe that he had such authority; and the corporation would be estopped to say that it did not know that the house had been put up. The local directors also must have known it.

I do not here argue the question of ratification by acceptance of rent, though strong. It would seem that the local directors knew, or ought to have known, of its payment. But the act of Johnson was more than a silent acquiescence; it was a positive written permission to make the erection, and if invalid was a fraud by which the company was estopped. See Smith's Leading Cases cited in opinion below; Story's Eq. Jur., Sec. 387.

If these views are correct, on the 6th of May, 1882, the plaintiff was in possession of a valid leasehold which would expire on August 9, 1882, at $12 a month rent. He was also the owner of an unquestionable claim against the defendant here in suit for $1,000, the value of the new building he had erected on the land leased two years before.

An action of ejectment by defendant against plaintiff for the land leased was then pending at Hilo, and by a paper then exe-

cuted at Hilo between the parties the defendant claims that the plaintiff released the demand in suit. The paper is as follows:

"This indenture, made this 6th day of May, 1882, by and between Akiona (Ch.) of Kohala, Island of Hawaii, of the first part, and the Kohala Sugar Company, a corporation duly created and existing under and by virtue of the laws of the Hawaiian Islands, of the second part, witnesseth:

That whereas the said party of the second part has commenced a suit in ejectment against the said party of the first part to eject him from certain premises at said Kohala, the property of said party of the second part, which said premises are claimed by said party of the first part by virtue of a lease made to him by Henry Johnson, as manager of the Kohala Plantation, the validity of which lease is denied by said party of the second part; now, therefore,

The said party of the first part, in consideration of the discontinuance and withdrawal of said suit, doth hereby surrender the said lease and relinquish all claim to said premises, or any part thereof by reason of the said lease, or by reason of any right or claim arising thereout or therefrom; and doth hereby admit all of the claim of the plaintiff, the Kohala Sugar Company, in and to said premises, and that the said party of the first part is tenant at will only of the same, and at any and all times, on ten days' notice to quit, shall and will quit and surrender possession thereof to the said party of the second part, and will on demand pay up all arrears of rent and thereafter make payment of rent from time to time as demanded.

And the said party of the second part, in consideration of the aforesaid, doth hereby agree to discontinue and withdraw the said action of ejectment.

In witness whereof the said parties hereto have caused the due execution thereof by the attachment hereto of the corporate seal of said company, and the several hands and seals of said party of the first part, and names and seals of the President and Treasurer of said corporation."   *   *   *

In *Rich vs. Lord*, 18 Pick., 322, heard in 1836, Shaw, C. J., says:

"It is now a general rule in construing releases, especially where

the same instrument is to be executed by various persons standing in various relations and having various kinds of claims and demands against the releasee, that general words, though the most broad and comprehensive, are to be limited to particular demands, where it manifestly appears by the recital, by the nature and circumstances of the several demands—to one or more of which it is proposed to apply the release—that it was so intended to be limited by the parties. And for the purpose of ascertaining that intent every part of the instrument is to be considered."

The release in this case was from plaintiff and others as general creditors severally of John Erskine Jr. and Madison D. Erskine, who assigned property to pay their debts. The plaintiff besides held notes secured by a mortgage on property assigned which were not specially secured by the assignment. The plaintiff takes an interest under the assignment and executes, with the other creditors, a release, saying that "they so severally release said John Erskine Jr. and Madison D. Erskine of and from all and singular their several debts and demands against them of every name and nature."

The Court held the mortgage and notes not released.

In *Lyman vs. Clark*, 9 Mass., 234, decided in 1812, where the consideration of the release was $25 and the additional sum sought to be released was £50, secured by will of Caleb Clark, the Court say:

"The words used in this release ought not to be extended beyond the consideration. Otherwise we should make a release for the parties, which they never intended or contemplated. The whole instrument is to be taken together, and not divided into parts. It is a general and reasonable rule that more general words in an instrument shall be restrained by other expressions more limited in the same instrument." And at page 237 the Court quotes from Bacon's Abridgment as follows:

"That where there are general words all alone in a deed of release they shall be taken most strongly against the releasor; but where there is a particular recital in a deed and then general words follow, the general words shall be qualified by the particular recital."

The language of the release was: "We do each hereby acquit

and discharge the said Eleazer Clark from all demands we have or may have on him by virtue of said Caleb's last will."

The Court held this no release of the £50.

In *McIntyre vs. Williamson*, 1 Edw. Ch., 347, decided in New York in 1831, where for a consideration of $200 a demand for that amount and also a mortgage and bond for $950 were claimed to be released, the law was laid down as above cited. The language of the release was ample to include the mortgage but did not specify it.

See also *Moore vs. McGrath*, Cowp. 9 ; *Keelikolani vs. Commissioners*, not reported ; *Whallon vs. Kauffmann*, 19 Johns, 97; *Jackson vs. Stackhouse*, I Cowp., 122 ; *Coles vs. Hawes*, 2 Johns. Cas., 203 and note 2 ; 2 Blacks. Com., 379 ; *Dewey vs. Bordwell*, 9 Wend., 65.

The law of release being as above quoted, I think that the plaintiff's demand in this case was not released or intended to be released by the surrender of May 6th. The consideration first named was the discontinuance of the ejectment suit. Had that suit succeeded, as I have shown, the defendant could at most have recovered only the possession of the land, including the building, for the value of which this suit is brought. The demand for that value would have remained intact. The lease had but three months and three days to run. The plaintiff for his surrender of it received what might be considered by him nearly or quite as valuable—an indefinite extension of his possession, at the same rent at will, on ten days' notice to quit. He received nothing more. A verbal right to remove his erections was thereafter accorded to the plaintiff. It was of little worth to him. He had no land proper to move the building on to. If the defendant is right, the plaintiff intended to give up for the flimsy title of a tenant at will on ten days' probation and a chance to keep his leasehold for three months, which might be deemed an even bargain ; but also a sure demand for $1,000. That demand was not mentioned in the document, nor can I believe that it was contemplated or intended by the parties. The according, subsequently, to Akiona of the right of removal and his declining to take advantage of it, and his persistent asking for payment for the value of the building as well as of his supposed interest in the fee of the leased land,

show that the parties did not intend the surrender or release of the claim in suit. Their minds did not meet on that point. The object of the paper was the surrender of possession of the premises and the substitution therefor of the tenancy at will. And the words "relinquish all claims to said premises or any part thereof by reason of the said lease," followed by the general words "or by reason of any right or claim arising thereout or theiefrom, and doth hereby admit all of the claim of the plaintiff, the Kohala Sugar Company, in and to said premises, and that the said party of the first part is only tenant at will of the same," cannot be construed to cut off, without compensation, the plaintiff's claim in this action, which by the terms of the new tenancy it was evident nobody contemplated to be enforced before the expiration of the tenancy at will.

For these reasons I dissent respectfully from the opinion of the majority of the Court.

### OPINION OF AUSTIN, J., APPEALED FROM.

On the 9th day of August, 1879, what appears to be a lease in writing, from the defendant to the plaintiff, of certain land and premises in Kohala, Hawaii, for the term of three years from date, at the monthly rental of $12, was executed and delivered to the plaintiff by H. Johnson, who signs the instrument in the name of defendant by himself. At the time he was acting manager of the plantation, in the absence of Mr. Geo. C. Williams, manager, and remained such acting manager till the return of Williams in 1880. There were, in the absence of Williams, two local directors, whose duty it was to confer with Johnson about plantation matters.

The instrument, in terms, gave plaintiff the right to erect a certain building on the land and move another, and agreed that at the end of the lease the defendant would buy the new house at a reasonable price. In pursuance of this lease, the plaintiff at once entered into possession, and moved one house and erected another, and occupied the premises and paid rent till the return of Mr. Williams, the manager, in February, 1880, and soon thereafter was informed by Mr. Williams that his lease was void;

but was allowed to remain, and paid rent as usual to Williams, till he resigned as manager in 1881, and thereafter continued to pay rent to Mr. Chapin, as manager.  In May, 1882, ejectment was brought by defendant against plaintiff, and thereupon an instrument was executed between plaintiff and defendant, which recites that the plaintiff, in consideration of the discontinuance and withdrawal of said suit (in ejectment), " doth hereby surrender the said lease, and relinquish all claim to said premises, or any part thereof, by reason of said lease, or by reason of any right or claim arising thereout or therefrom," and the plaintiff further consents that he is a tenant at will of defendant, removable on ten days' notice, and agrees to pay rent on demand.

Thereafter, about May, 1884, the plaintiff was ejected by defendant from the premises, and thereafter demanded payment for said building erected by him, or the right to remove the same, which were refused, and the plaintiff brings suit.

The by-laws of the defendant provide as follows :

" Legal signature.

" The President and Treasurer shall sign all conveyances and contracts, which are required by the laws of this Kingdom to be put on record, and all such other documents (not of record) as require the company's signature.

" They shall sign all certificates of stock."

No notice of this by-law was brought home to the plaintiff, and he was not bound by it.  See Potter on Corporations, Sec. 143. The President and Treasurer were resident at Honolulu, Oahu, and the books of the Company were there kept.  The plantation was on Hawaii.  The evidence shows that the practice of the Company was for the President and Treasurer to execute all written contracts, including leases, and that no actual authority was given to the manager or acting manager to execute leases like the one in suit.  But the by-law does not prohibit it. Whether the lease was binding on the defendant depends on whether its execution was within the apparent scope of Johnson's authority.  He was acting manager, in charge of a large plantation.  No notice is shown to plaintiff of any local trustees appointed or acting.  Johnson assumed to sign for the defendant. He was their general agent, and I shall hold that the execution

of this lease was within the apparent scope of his authority, and the lease was binding on defendant.

See Potter on Corporations, Sections 128, 129 and 144.

If I should be overruled in this conclusion, at all events, Johnson had authority sufficient to uphold his verbal lease to plaintiff for a year, and the defendant was bound at least for that term. See Taylor's Landlord and Tenant, Sec. 12.

Plaintiff had a right to assume that Johnson could let him into possession, and authorize him to build as he did. Plaintiff acted on that assumption, and entered and built the house, for the value of which he brings suit. Johnson assumed the right to make the lease as he did. If he had no such right, it operated as a fraud on the plaintiff. What Johnson did was at least license to Akiona to enter and build, and the defendant is estopped from denying it. The defendant's high officers cannot remain in Honolulu inactive, when valuable erections are made on their land, with the knowledge of their acting manager, and on his authority, and afterwards deny his authority, and appropriate the erections and refuse to pay for them.

See Smith's Leading Cases, Vol. 3, pp. 566 and 570, and cases cited.

Upon the foregoing grounds, I hold that when the instrument, dated May 6, 1882, was made, the plaintiff, when he should remove from the premises leased, was entitled to pay for the house he had built thereon. This was a valuable right. The paper did not say that he released it. It was couched in general terms, and the plaintiff cannot be supposed to have intended to release it. If it was so intended, it should have been expressed, under well-settled rules of law.

The right to compensation for the building was the plaintiff's when he was ejected from the land. The right of removal, if the plaintiff had it, was a separate one. His right to recover here was not lost by his non-removal of the building before he was ejected. He can recover its value upon the facts stated and proved. Upon those facts it appears that the building cost one thousand dollars.

The plaintiff may have judgment for one thousand dollars against defendants, with costs.

Honolulu, February 24, 1885.