# Cases

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## March, 1892.

---

CHAUNCEY ST. JOHN, Respondent, v. HOWARD W.
COATES and Another, as Executors of GEORGE H.
PECK, Appellants.

*Statute of limitations — who are partners — who are tenants in common — concurrent
remedies at law and in equity — the statute of limitations at law governs — when
it begins to run — the husband as agent — a stale demand.*

In 1866 George H. Peck, and others not parties to the litigation hereinafter men-
tioned, purchased at a sheriff's sale part of an oil farm in Pennsylvania, by a
deed which conveyed the premises to the grantees in certain fractional parts
described as undivided portions, and in 1866 Peck purchased a further interest
in the farm from one Perry and wife. The conveyances made to Peck were
taken by him for himself and certain associates, among whom was Rhoades
Cole, who stated to Peck that Lewis St. John was interested with him in his
share, and in 1867 Peck conveyed a part of the farm to Lewis St. John. Cole
took the care and management of the farm as superintendent, received the rents
and royalties, and remitted a portion of them to Peck for division between
Peck and his associates. In 1868, as claimed by the executors of Peck, since
deceased, Cole admitted to Peck that he and Lewis St. John had taken moneys
due Peck and his associates, and Cole agreed that, until this defalcation should
be made good, all moneys thereafter sent by Cole to Peck should belong to
the latter and his associates. It was also claimed that Lewis St. John acquiesced
in this agreement.

In 1870 Cole ceased to be superintendent; in 1876 Lewis St. John and also the
wife of Cole, to whom Lewis St. John alleged that he had conveyed a part
of his interest, assigned their rights in the premises to one Chauncey St. John,

who, in 1877, brought an action against Peck for moneys alleged to be due from him.

All the remittances by Cole to Peck, except one, were made prior to 1872.

The complaint was in the form of a complaint in an action at law, but it demanded an accounting.

*Held,* that the action could not be maintained.

That the foregoing facts did not show that Peck and his associates, including Lewis St. John, were partners, and the effect of the deeds was to make the parties tenants in common.

That as there was no allegation in the complaint of a partnership, and no evidence of an express agreement for one, the court would presume that none existed.

That the six years' statute of limitations applied.

That the demand in the complaint for an accounting did not affect the question, because as tenant in common the plaintiff could have maintained an action at law, under section 1666 of the Code of Civil Procedure, to recover any moneys due his assignors, Lewis St. John and Mrs. Cole.

That, apart from the remedy under the Code, an action at law could be maintained by the equitable owner of moneys in the hands of another upon an implied promise to pay it over to the person beneficially entitled.

That where there is concurrent jurisdiction to entertain an action in equity for an accounting, and an action at law to recover the same debt, the statute of limitations applicable to actions at law, and not that relating to suits in equity, controls.

That the statute began to run in favor of Peck from the time when he received the moneys alleged to belong equitably to the plaintiff, as assignee of Mrs. Cole and Lewis St. John.

That as the payment by Cole to Peck, in 1872, was less than the amount due from Cole, by reason of the defalcation and the subsequent agreement as to the manner in which it should be made good, there could, for that reason, be no recovery.

That Mrs. Cole was bound by her husband's acts in making the agreement, his authority to so act sufficiently appearing.

That the court would not be strenuous to aid a plaintiff in establishing a stale claim for which he had paid nothing.

APPEAL by the defendants, Howard W. Coates and Benjamin C. Wetmore, executors of the last will and testament of George H. Peck, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 22d day of April, 1891, upon a recovery by the plaintiff, on a hearing at Special Term, and after a trial at the New York Circuit before the court and a jury, to which special issues were sent; and also from an order made upon the trial of the special issues in the action entered in said clerk's office on the 27th day of May, 1891, denying a motion to set aside the verdict of the jury and grant a new trial of the special issues.

*John H. Post*, for the appellants.

*Lockwood & Post*, for the respondent.

ANDREWS, J.:

This action was commenced on October 3, 1877, against one George H. Peck, now deceased. The allegations of the complaint are, in substance, as follows:

That, in 1866, the said Peck conveyed to one Lewis St. John by deed an undivided 20¾/96 of a certain farm of land, containing about one hundred acres, situated in Venango county, Pennsylvania, called the Rooker Farm; that said farm contained oil wells, and that the same having been leased for a percentage of the oil produced, large sums of money were realized from the sale of such oil, and large profits were also realized from the letting of portions of said farm for building lots; that said Lewis St. John was entitled to 20¾/96. of said rents and profits; that said Peck received large sums of money as manager of the said property, which belonged to said St. John, but neglected to pay over the same; that said Lewis St. John conveyed by deed to one Ellen Cole an undivided ten-ninety-sixths of said farm, for which proportion said St. John thereafter was bound to account to said Ellen Cole (the deed to her not having been recorded); that said Lewis St. John and said Ellen Cole assigned to the plaintiff all their interest in the premises; that the plaintiff demanded of said Peck that he render an account of the moneys received and paid by him for said Lewis St. John, but that he did not do so. Therefore, plaintiff prays that an accounting may be taken of such moneys, and that the defendant may be adjudged to pay to the plaintiff anything which shall, upon the taking of such account, appear to be due to the plaintiff.

The answer denies that the defendant conveyed a portion of said farm to Lewis St. John; or that said Lewis St. John was entitled to 20¾/96 of the rents and profits; or that said Peck received any money belonging to said Lewis St. John, or that Lewis St. John ever assigned to the plaintiff any part of his interest in the premises; also alleged that Lewis St. John, for the previous two years, had been of unsound mind and incapable of making any such assignment; also set up the six years' statute of limitations, and an

affirmative defense in the nature of a set-off, upon the ground that one Cole was agent of the property, and with said Lewis St. John wrongfully retained, appropriated and converted to their own use large sums of money due to the defendant, the amount of which exceeded the share or interest alleged in the complaint to have been assigned to the plaintiff by said Lewis St. John.

A trial of the action was commenced at Special Term in 1878, and was concluded before a referee, who found for the plaintiff. Peck died soon after the trial on November 1, 1879, and the present defendants were substituted in his place. On appeal the General Term reversed the judgment and directed that a special issue be framed as to the mental capacity of said Lewis St. John.

Subsequently an order was entered, in 1883, at Special Term settling eleven special issues to be tried by jury. Upon the first trial of these issues the jury disagreed as to some of them. Upon a second trial all but three of said issues were stricken out by the court, and the jury returned a verdict as to those. On appeal the order of the Circuit Court striking out a part of the issues was reversed by the General Term. Subsequently an order was entered by the Special Term, in 1890, striking out the same issues, and this order was affirmed by the General Term. Upon another trial of the issues, as resettled, the jury found (1st) that Lewis St. John was mentally competent to make the assignment in question; (2d), that the defendants' testator had made a deed to Lewis St. John conveying 20¾/96 of the Rooker Farm; (3d), that the deed from Lewis St. John to Ellen Cole for $\frac{40}{96}$ was *bona fide*.

Subsequently the action was brought to trial at Special Term, and such trial resulted in a judgment for the plaintiff for the sum above mentioned. From this judgment, and from an order denying a motion for a new trial of said issues, made upon the judge's minutes, the present appeals were taken.

The transactions out of which this action arose are as follows: On August 30, 1866, the sheriff of Venango county, Pennsylvania, deeded to said Peck and others a tract of land in said county known as the Rooker Farm. The deed conveyed the property in the following proportions: To one Perry, $\frac{51}{96}$; to said Peck, $\frac{24}{96}$; to one Bates, $\frac{12}{96}$; to one Baum, $\frac{6}{96}$; to one Austin, $\frac{1}{96}$; to one Matthews, $\frac{1}{96}$; and to one Graves and Seager, jointly, $\frac{1}{96}$; all expressed

to be in undivided portions; and the deed was recorded September 6, 1866. On October 1, 1866, said Perry and his wife conveyed said $\frac{54}{96}$ to said Peck, and the deed was recorded October 10, 1866. It appears that Joseph H. Godwin and Augustus A. Conover and Rhoades Cole were interested with Peck in the purchase of such $\frac{42}{96}$ of the farm, and Cole stated to Peck that one Lewis St. John (plaintiff's assignor), was equally interested with him in a fractional share thereof. Cole went to the farm and acted as superintendent, under a power of attorney from Peck and the other owners, collecting the rents and royalties, paying expenses and remitting to Peck what purported to be $\frac{75}{96}$ of the net income.

The money so received Peck distributed in the proportions above indicated to Godwin and Conover, retaining his own share, and paying to St. John, by Cole's direction, the joint share of Cole and St. John. Up to June, 1868, Peck had received from Cole $33,750, which had been so distributed. It is claimed by the defendants that about this time Cole confessed to Peck that he and St. John had been sinking oil wells in Pennsylvania, on their own private and joint accounts, and that Cole had taken moneys from the income of the Rooker Farm, which should have been remitted to Peck, and had used the same on his own and St. John's account in sinking such wells; that said Cole then agreed that until such misappropriations were made good, all moneys sent by him to Peck should belong to and be divided between Godwin, the personal representative of Conover (who had died prior to February, 1867), and Peck; and that St. John consented to such agreement; that from that time on Peck distributed the moneys received by him in accordance with said agreement.

In April, 1870, the production of oil having greatly diminished, Cole returned to New York and resided there from that time to the time of the trial. It is also claimed by defendants that during the ensuing years, until the end of 1876, Peck and St. John lived in New York, meeting occasionally, and that Cole had been there since April, 1870, frequently calling at Peck's office, but that no claim was ever made by Cole or St. John upon Peck for any moneys accruing from said farm, or that there were any unsettled matters between them.

It appears by a stipulation made in the action, that subsequent to

June 30, 1868, Peck received of the productions of said farm the following sums : February 4, 1869, $800 ; July 20, 1869, $1,912.50 ; May 22, 1870, $1,200 ; December 8, 1870, $1,500 ; April 28, 1871, $600 ; April, 1872, $541.50.

It is strenuously insisted upon this appeal, by counsel for the defendants, that many errors were committed upon the trial of the issues at circuit in the admission and exclusion of evidence ; also, that the evidence did not justify the findings of the jury, nor those made at the Special Term, as to the mental capacity of Lewis St. John to make the assignment, or as to the making of a deed by Peck to St. John conveying 20¾/96 of said farm, or as to the *bona fides* of the deed from Lewis St. John to Ellen Cole.

It is not, however, necessary to consider the points raised as to these matters, because, even if we accept the view of the facts most favorable to the plaintiff, and assume that the findings of the jury and of the court, upon these matters, were correct, still we are of the opinion that the judgment must be reversed upon other grounds viz., that a recovery of all the amounts paid to Peck, except the last one of $541.50, was barred by the statute of limitations ; and, secondly, that no recovery could be had as to that item because of the misappropriations of money by Cole for the benefit of himself and St. John, and the subsequent agreement of Cole, consented to and acquiesced in by St. John, that the moneys paid over to Peck should be divided by him between Godwin, Conover's estate and himself until such misappropriations were paid.

Plaintiff's counsel claims that the relations between Peck and the other owners of the seventy-five ninety-sixths of the farm were those of partners, but we do not think that this claim is well founded. In the first place, the complaint contains no allegation that such relation of partnership existed between Peck and the other owners of such seventy-five ninety-sixths. The allegation is that Peck conveyed an undivided 20¾/96 to St. John, and that St. John conveyed an undivided ten ninety-sixths to Ellen Cole. This amounts to an allegation that Peck, St. John and Ellen Cole were tenants in common. There is no allegation or suggestion to be found anywhere in the complaint in regard to such alleged partnership. According to the complaint the right of plaintiff to recover is placed solely upon the fact

that the parties were tenants in common, and that Peck, one of such tenants, had received rents and profits, of which a portion rightfully belonged to St. John and Mrs. Cole. Moreover, the only allegations in the complaint, upon which a claim for equitable relief can be founded, are those in which it is alleged that plaintiff had demanded an account of Peck, which demand had not been complied with, and the prayer for relief that such account be taken. The complaint has not been amended, nor does it appear that any application to amend it was made, and it would seem that the idea of a partnership was an afterthought, put forward to meet the exigencies of the case. If the owners of such seventy-five ninety-sixths of the farm were partners, they, or their representatives, should all have been made parties to this action; and the fact that they were not tends to support the conclusion that it was not intended by the draughtsman of the complaint to rest the claim of the plaintiff upon the ground that the owners of such seventy-five ninety-sixths were partners.

Moreover, the evidence in the action does not establish such partnership. According to the agreement of the plaintiff, at the time said payments were made to Peck, the title of the property stood as follows: $10\frac{3}{4}/96$ in St. John, by virtue of Peck's conveyance to him; $\frac{10}{96}$ in Ellen Cole, by virtue of St. John's conveyance to her; $54\frac{1}{4}/96$ in Peck, by virtue of the conveyance to him from the sheriff of Venango county and Perry; which $54\frac{1}{4}/96$ belonged in equal parts to himself, Godwin and the heirs of Conover; and $\frac{25}{96}$ in the various other parties above mentioned.

Cole went to Pennsylvania and acted as superintendent. His testimony as to what he did is as follows: "I never had but one power of attorney from Mr. Peck; it was a power of attorney to act for George H. Peck for $\frac{75}{96}$ of the farm, and collect the moneys; while I was out at the farm I collected the rents — royalties — for the oil sold, and paid the money to the different parties for the interest I held a power of attorney for; I sent $\frac{75}{96}$ of the profits to Mr. Peck; the expenses were deducted by myself; I sent them the balance of the moneys after deducting expenses; of the remaining interest, $\frac{12}{96}$ were owned by one William A. Bates; $\frac{6}{96}$ by Bond; $\frac{1}{96}$ by Graves and Seager; I collected these; I had a power of attorney from them, and remitted them the money;

I held a power of attorney from all parties; I remitted $\frac{75}{96}$ to Peck and the balance to the other parties; my position was superintendent." \* \* \*

"The income came from the production of the farm, the royalties of the wells and rents. \* \* \* My duties as superintendent were to lease the farm in half-acre plots for half royalties — the usual way of the oil business. I collected the royalty and gave $\frac{75}{96}$ of it to Mr. Peck, and the other twenty-one shares were owned by others. I deducted the expenses. What I sent to the owners was the net product. \* \* \* I might have received instructions from other persons, but I didn't act upon any instruction or order of any other person than Peck with respect to the $\frac{75}{96}$." The situation, therefore, was as follows : Peck, St. John and Mrs. Cole (the wife of Cole, the superintendent), and other parties were tenants in common of this farm; Cole stayed at the farm, received royalties and rents, and, after paying expenses, sent seventy-five ninety-sixths of the net balance to Peck for distribution. These facts do not establish a partnership between Peck, St. John and Mrs. Cole, but merely that Peck, being a tenant in common with them, received certain moneys, which, it is claimed, it was his duty to pay over to them.

Partnership, as between the partners, is a matter of agreement, and, so far as concerns the partners only, whether such agreement was made must depend upon the intention of the parties. There is no evidence whatever of any express agreement for a partnership between Peck and St. John or Mrs. Cole, or any of the other persons who were interested in the property. Peck and Godwin both testified that there was no partnership, and Peck testified that he never knew anything about St. John's having an interest in the property except what Cole told him ; and it certainly is difficult to understand how Peck can be regarded as having formed a partnership with Mrs. Cole, simply because St. John conveyed ten ninety-sixths of the property to her.

We are of the opinion that, assuming that Peck made the conveyance to St. John, and St. John to Ellen Cole, as claimed in the complaint, the relations between Peck, St. John and Mrs. Cole were not those of partners, but of tenants in common, and that the six years' statute of limitations applies, notwithstanding the fact that the complaint prays for an accounting, because the plaintiff could have

maintained an action at law to recover any moneys due him, as assignee of his brother, Lewis St. John, and Mrs. Cole.

Section 1666, of the present Code, provides that a tenant in common of real property, or his executor or administrator, may maintain an action to recover his just proportion against his co-tenant, who has received more than his own just proportion, or against his executor or administrator. If Peck, being a tenant in common with Lewis St. John and Mrs. Cole, had received more than his proportion of the rents and profits of the farm, they, or their assignee, could, under this section of the Code, have maintained an action to recover their proportion.

Moreover, independently of this provision of the Code, an action at law might have been maintained by Lewis St. John and Mrs. Cole, or the plaintiff, as their assignee, to recover money had and received for their benefit, if it was true that Peck had received from Cole moneys which it was his duty to pay over to Lewis St. John and Mrs. Cole.

"Money in the hands of one person to which another is equitably entitled, may be recovered in a common-law action by the equitable owner, upon an implied promise arising from the duty of the person in possession to account for and pay over the same to the person beneficially entitled. The action for money had and received to the use of another is the form in which courts of common law enforce the equitable obligation. The scope of this remedy has been gradually extended to embrace many cases which were originally cognizable only in courts of equity." (*Roberts* v. *Ely*, 113 N. Y., 131.)

"When money is received by one to and for the use of another, under such circumstances that it is his duty at once to pay it over, then an action for money had and received may be brought to recover it without any demand, and in such a case the statute of limitations begins to run from the day of the receipt of the money. * * * Even if an accounting was necessary to determine the amount due from him to his brother the account could be taken in an action at law as well as in an action in equity, and in whatever form the action was commenced the legal rule of limitations would be applicable. * * * All the relief asked for in the complaint is an accounting and a judgment for a sum of money, and no other relief was needed or possible upon the facts established. * * *

It is said, however, that the defendant was, in some sense, a trustee of the moneys received by him, and hence that the statute of limitations could not begin to run in his favor until he repudiated the trust. But the defendant was not a trustee in the sense contended for. He had received money belonging to another and became a debtor for the same, and he is in no other sense a trustee than every one is who receives money to and for the use of another. There was no actual express trust as to these moneys created by the act of the parties. \* \* \* If the defendant was, in any sense, a trustee of the moneys received by him, it was simply an implied trust which the law would raise for the purposes of justice; and as to the liability growing out of such a trust, the ordinary rules of limitation apply. (*Mills* v. *Mills*, 115 N. Y., 80, 85, 86.)

"In cases of implied trusts in relation to personal property, or the rents and profits of real estate, where persons, claiming in their own right, are turned into trustees by implication, or by operation of law, it is a general rule that the right of action in equity will be considered as barred in six years in analogy to the limitation at law." (*Hawley* v. *Cramer*, 4 Cow., 717.)

In *Smith* v. *Bodine* (74 N. Y., 30, 33), where a claim was made for a portion of the profits of the business, as compensation for services rendered in it, the court said: "The fact that a statement of an account between him and the defendants was necessary to establish his claim did not require an equitable action; and the nature of the action was in nowise changed by the introduction of evidence showing how the accounts stood;" and, also, that: "An accounting is proper in the action at law."

Under these circumstances, the jurisdiction of the court to entertain this action for an accounting in equity was concurrent with its jurisdiction to entertain an action at law to recover the amount alleged to be due from the defendants to the plaintiff, and, upon all the authorities where such concurrent jurisdiction exists, the six years' limitation applies. (*Kane* v. *Bloodgood*, 7 Johns. Ch., 121; *Bertine* v. *Varian*, 1 Edw. Ch., 345; *Atwater* v. *Fowler*, 1 id., 422; *Loder* v. *Hatfield*, 71 N. Y., 103; *Roup* v. *Bradner*, 19 Hun, 517; *Matter of Neilley*, 95 N. Y., 390.)

In *Kane* v. *Bloodgood* (*supra*), the court said: "Courts of equity are bound to yield obedience to the statute of limitations upon all

legal titles and legal demands, and cannot act contrary to the spirit of its provisions. I understand this proposition to mean that if the party has a legal title and a legal right of action, and instead of proceeding at law, resorts to equity; instead of bringing his action of account, or detinue, or case, for money had and received at law, files his bill for an account, the same period of time that would bar him at law will bar him in equity. This is the principle that pervades the cases."

In *Loder* v. *Hatfield* (*supra*) the court said: "An action at law might have been maintained against him therefor, if the cause of action had accrued before his death; or against his executors after his death. * * * So that equity had not exclusive cognizance of the demand. In such case the same law of limitation of actions applies in both cases."

In *Roup* v. *Bradner* (*supra*) the court said: "Assuming that there was a trust, which a court of equity would have enforced, there was also a concurrent remedy at law, upon the agreement, and the six years' limitation applies."

In the *Matter of Neilley* (*supra*) the court said: " When the complainant has a concurrent remedy in a court of equity and in a court of common law, time is as absolute a bar in equity as it is at law * * * and in such cases the limitation as to actions at law applies."

In *Butler* v. *Johnson* (111 N. Y., 204) the whole subject of the application of the statute of limitation to actions, in which there is concurrent jurisdiction in law and equity, was elaborately considered, and the court held as follows: " We think that in causes of action which, before the adoption of the Code, the two courts had concurrent jurisdiction over, or, in other words, where the subject of the action was the same in both courts, and the remedy only was different, such actions are included in and provided for by the sections preceding the above-mentioned seventy-seventh section, and hence are not included in that section as within the ten years' statute."

In the case at bar, if the original defendant, Peck, received from Cole moneys which equitably belonged to St. John and Mrs. Cole, it was his duty to have paid them over at once, and the statute of limitations began to run from the time he received the moneys. In point of fact, no accounting was necessary, for it appears by the

testimony that, before the action was brought, Cole visited said defendant Peck and examined his check-book, and ascertained that the amount which it is alleged Peck ought to have paid over to St. John, for the benefit of himself and Mrs. Cole, was the sum of $1,925; and that was the consideration named in the assignment from Lewis St. John to the plaintiff; and it was to recover that sum of money only that this action was brought. Not only was no accounting necessary, but, as a matter of fact, no accounting was had upon the trial.

We think it is clear, upon the facts proved in this case, that if Peck was indebted to the plaintiff, as the assignee of his brother, and Mrs. Cole, the plaintiff might have maintained an action for money had and received, and that the six years' statute of limitations applies to all of said payments, except the payment of $541.50, which was made on April 15, 1872.

We are, moreover, of the opinion that the plaintiff cannot recover the said last item of $541.50, because the evidence establishes that Cole, while acting as superintendent, misappropriated moneys which he should have paid over to Peck, and that he subsequently agreed that the proceeds of the farm should be distributed between Peck, Godwin and the estate of Conover until the amount of the misappropriation was made good; and that St. John consented to this arrangement.

The ascertained amount of such misappropriation was, if Cole was entitled to a salary, $4,418.68. If he was not entitled to a salary, such misappropriations amounted to $11,710.35. The evidence tends strongly to establish the fact that he was not entitled to a salary. But it is not necessary to determine that question, because we consider that the statute of limitations bars a recovery as to all payments except the last, which was $541.50; and if the misappropriation was no more than $4,418.68, such sum of $541.50 could not be recovered, if Cole and St. John agreed that the proceeds should be distributed between Peck and Godwin, and the estate of Conover, until such sum of $4,418.68 was made good.

We think that the evidence fully establishes that the misappropriation by Cole did amount to said sum of $4,418.68, and that Cole made the agreement in question. It is objected, however, that such agreement did not bind Cole's wife, to whom it has been found by

the jury that St. John made a *bona fide* conveyance of ten ninety-sixths of the property.

We think, however, that the evidence shows that Cole was the agent of his wife, and had full authority to act for her in making such agreement, and that such agreement was binding upon her. Peck testified that St. John consented to this agreement; and the conduct of Cole and St. John, after 1868, tends strongly to prove that such agreement was made by both of them. For more than eight years after Cole's confession to Peck in regard to the misappropriation of the money, and for more than six years after his return to New York, Cole never made, or caused to be made, any claim upon Peck for any moneys alleged to be due to Cole's wife; nor was any claim for such moneys made on her behalf by any one. St. John lived continuously in New York, and transacted business until October, 1876, and between 1868 and 1876 had interviews with Peck about matters relating to Pennsylvania oil interests, but during all this time made no claim to Peck that the latter had received any money from the Rooker farm which it was his duty to pay over to St. John or to Mrs. Cole. In the meantime at least two-thirds of the money received by Peck after 1868 had been paid over by him to Godwin, and the personal representatives of Conover, in reliance upon the agreement of Cole and St. John, that the net proceeds should be distributed between Godwin, Conover's representatives and Peck, until the misappropriation had been made good. Under these circumstances, it certainly would be a great hardship if Peck or his personal representatives, the present defendants, should be required to pay over to the plaintiff moneys paid out by Peck under such circumstances.

The plaintiff is not entitled to any especial consideration in a court of equity. It seems that in the fall of 1876 Lewis St. John had a stroke of apoplexy, and that his mind was somewhat affected thereby. The assignment of his alleged claim against Peck to his brother, the plaintiff, was made after he had only partially recovered from such stroke of apoplexy, though the jury has found that he had sufficient mental capacity to make such assignment. It appears, however, that the plaintiff paid nothing for the claim, but took it on account of an alleged antecedent debt. It appears also by the testimony that Cole was active in promoting this stale claim

against the original defendant Peck. Lewis St. John, who had made no claim on his own account for over eight years, was induced to execute the assignment to his brother, the plaintiff, and thereupon Mrs. Cole also executed to plaintiff an assignment of her alleged interest in such claim. The plaintiff therefore represents the alleged interest of his deceased brother, for which he paid nothing, and also the interest of Mrs. Cole, who is the wife of Cole, whose misappropriation of moneys led to all the trouble. We think the evidence establishes the misappropriation by Cole, and the agreement by himself on behalf of his wife, which was consented to and acquiesced in by St. John, that until the misappropriation was made good, Peck should distribute the moneys in the manner above specified; and, even if the consideration of all the testimony in the case had led to a doubt upon these points, as the burden of proof was upon the plaintiff to establish his case by a preponderance of evidence, we should think that the defendants ought to have the benefit of any such doubt.

Upon the whole case we think that the judgment should be reversed, and a new trial ordered with costs to appellants to abide event.

VAN BRUNT, P. J., concurred.

Judgment reversed and new trial ordered, with costs to appellants to abide event.