DECIDED IN

# THE SUPREME COURT

OF THE

## STATE OF WASHINGTON

[No. 4474. Decided May 4, 1903.]

CALLIE HUGHES, *Appellant,* v. NEW YORK LIFE INSUR-

ANCE COMPANY, *Respondent.*

INSURANCE — ACTION ON POLICY — ESTOPPEL.

The fact that plaintiff was misled by a mistake of defendant into abandoning a contemplated action on a policy of life insurance for a larger sum, and induced into commencing another one on the strength of defendant's admission that the insured had signed a substituted application calling for a different form of policy, would not estop defendant from setting up the truth, where there is no showing that the contemplated action was a valid one and is no longer open to plaintiff, and the costs of the present action appear to be the only injury suffered.

SAME — PLEADING — ISSUES.

In an action on a policy of life insurance, to which the company set up the defense that the application therefor had never been signed by deceased and that the copy furnished plaintiff purporting that he had signed same was a mistake on the company's part, the sustaining of a demurrer to a reply setting up estoppel to deny the signature, but which failed to deny the affirmative allegations of the answer, would leave no issue upon the genuineness of the signature of the insured.

Appeal from Superior Court, King County.—Hon. WILLIAM R. BELL, Judge. Affirmed.

1-32 WASH.

*Benson & Aust,* for appellant:

That the facts as shown by the records in this case make a clear case of estoppel in favor of appellant seems to be shown by the following cases: *Meister v. Birney,* 24 Mich. 440; *Polk v. Williams,* 52 S. W. 34; *Van Eter v. Crossman,* 4 N. W. 216; *Robb v. Shepard,* 15 N. W. 76; Bigelow, Estoppel, 621.

*Emmons & Emmons* and *H. T. Granger,* for respondent.

The opinion of the court was delivered by

FULLERTON, C. J.—The appellant is the widow of Archie Hughes, deceased, and the respondent is a life insurance company. On August 27, 1898, Archie Hughes made application to the respondent, through its agent at North Yakima, in this state, for a policy of insurance for the sum of $1,500 on the company's "Ordinary Life, 20 Year Accumulation Plan," with premium return equal to all premiums paid, paying to the agent the first premiums of $41.25, who gave him a receipt therefor acknowledging the payment, and agreeing to return the amount paid in case the application should not be accepted by the company. The company, on receipt of the application, declined to accept it on the plan applied for, but offered to accept it on their "Adjustable Accumulation, Ordinary Life, 20 Year Accumulation Plan," with life lien, but without premium return. Under this plan the amount payable in case of death the first year was $920.20, which amount would increase yearly thereafter by the amount of the annual premium of $37.05 until the premiums added to the first sum amounted to $1,500. A policy was accordingly prepared on this plan, and sent to the agent, to be delivered to the applicant on his acceptance thereof, to

be indicated by his signature to an amended application, a form for which was sent with the policy. This policy was not delivered, but was returned to the company under date of October, 1898, and afterwards canceled by it. In November following the cashier of the respondent's North Pacific branch office telegraphed the respondent to forward the policy, saying that the agent could deliver it. On receipt of the telegram a new policy was made out by the company, being a duplicate of the former one, with the exception that the insurance was to begin on a later date, and forwarded the same to the agent, to be delivered on the applicant's signing the amended application. This policy was also returned to the company under date of the 25th of November, 1898, with the information that it could not be delivered. On December 5th, following, in accordance with the practice of the company, a circular letter was sent to Mr. Hughes, calling his attention to the fact that the policy issued on his life had been returned and canceled, and asking why it was not accepted. To this Mr. Hughes replied that he had not seen any agent of the company since he made application for the insurance and paid the premium to the agent. The company then took the matter up with their branch office. The cashier of the branch office wrote Mr. Hughes, inquiring concerning the matter, and received a reply from him in effect the same as his former letter to the company. Pending the settlement of the matter, Mr. Hughes died. After his death the attorneys for Mrs. Hughes took up the matter with the company, who, at their request, forwarded them copies of all of the papers in its possession regarding the matter, including the original application, the proposed amended application, the policy proffered thereunder, and the correspondence had between the company and Mr.

Hughes and the company and its several agents. In the
same letter it stated it had nothing to show whether the
premium had been returned to Mr. Hughes or not, but
that, if it had not been so returned, it would pay it back
on the return of the receipt given therefor. In transcrib-
ing the proposed amended application it was made to ap-
pear that it had been signed by Mr. Hughes. The appel-
lant thereupon commenced this action for the sum of
$957.25, being the amount that would have been due upon
the policy offered to Mr. Hughes by the company, had it
been accepted, on death occurring during the second year
of the existence of the policy. In her complaint the ap-
pellant declared as upon an executed contract of insur-
ance, she averred the making of the original application,
the payment of the required premium, and the refusal of
the company to issue a policy thereon. She then averred
the execution and delivery by her husband of the amended
application, setting the same out as it appeared in the copy
sent her attorneys by the respondent, and averred that the
company issued and forwarded for delivery to her hus-
band a policy of insurance in pursuance thereof. The
company denied that the second application was ever exe-
cuted by the applicant, Hughes, or delivered by him to the
respondent, or that it had ever delivered or contracted to
deliver to Hughes a policy of insurance, and pleading af-
firmatively the facts substantially as we have recited them.
To the answer the appellant replied that neither she nor
her attorneys had any knowledge of what had transpired
between the applicant and the respondent, but that her
attorneys had written the respondent inquiring concerning
the facts, and that in response to such inquiries the re-
spondent had forwarded them copies of the application and
the amended application and insurance policy as set out

in the complaint; that the appellant and her attorneys relied upon such information, "and especially upon that portion thereof which purported to be the signature of Archie Hughes to his said amendment to his application, and that this action was brought relying thereon in the belief by appellant and her attorneys that Archie Hughes had in fact signed said amendment to said application." She further averred that her counsel had been intending and expecting to bring an action on a contract of insurance for the sum of $1,500, but, on receiving the several papers set out from the company, they abandoned all thought of such an action, and instituted the present one. She prayed that the respondent be adjudged to be estopped from asserting that Archie Hughes had not in fact executed the amended application. A demurrer was interposed and sustained to the reply, and on a trial had on the remaining issues the appellant was nonsuited.

Two questions are urged on the appeal: (1) Did the court err in sustaining the demurrer to the reply? and (2) did the court err in granting a nonsuit?

1. The doctrine of estoppel is of equitable origin, and is founded upon principles of equity and justice. It is applied to conclude a party who, by his acts or admissions, has influenced the conduct of another, only when in good conscience and honest dealing he ought not to be permitted to gainsay them. When an admission is relied upon to work an estoppel, and it has been made by mistake, or without any intent to injure another, it is only in extreme cases that the law will not permit the party making the admission to show the truth. Before that result will follow, it must appear that the admission was made under circumstances showing gross, if not culpable, negligence; and the other party must have acted thereon to his ma-

terial injury. The reply of the appellant does not make a case within these principles. While she alleges she abandoned a contemplated action for a larger sum, and commenced the present one on the strength of the respondent's admission, she does not allege that her contemplated action was a valid action, nor one in which she had reasonable cause to believe she could recover; nor does she allege that the same is not now open to her. Her only injury, therefore, has been the costs of the present action; and costs incurred in litigation are insufficient to constitute the basis of an estoppel. *Warder v. Baker,* 54 Wis. 49 (11 N. W. 342); *Frei v. McMurdo,* 101 Wis. 423 (77 N. W. 915).

2. On the trial of the cause the appellant introduced in evidence the correspondence between her attorneys and the respondent, the several copies of the instruments set out in the complaint, and then offered to show that she commenced this action relying upon the admission contained in the copy of the amended application above mentioned, and was misled thereby. This proffered evidence was rejected by the court, and, as we have before stated, a nonsuit entered against the appellant. The appellant now insists that she was entitled to go to the jury on the question whether or not the amended application was in fact signed by Archie Hughes, of which fact, she contends, the admission of the respondent was some evidence. But appellant has apparently overlooked the fact that this question was not in issue. True, the appellant alleged that it had been so executed in her complaint, which was denied in the answer; but the answer also affirmatively set forth the entire transaction between the respondent and the applicant, Hughes, in which it was averred specially that the amended application was never signed. The reply did not put in issue the truth of the affirmative matter thus

set up in the answer, but sought to avoid its effect by pleading matters which were thought to stop the assertion of the truth. When the reply was held insufficient, therefore, there was no issue of fact on the question suggested to submit to the jury, and hence there could be no error on the part of the court in refusing so to do.

The judgment is affirmed.

MOUNT, DUNBAR, ANDERS and HADLEY, JJ., concur.