THE PHILLIPSBURGH BANK v. JOHN FULMER.

1. The declaration of one garnishee in attachment, that he owed the defendant a certain sum of money, upon which the plaintiff did not otherwise act than to commence the proceeding in attachment, does not estop

*Hesketh* v. *Braddock.*

Phillipsburgh Bank v. Fulmer.

the garnishee on the trial from proving that he was not indebted to the defendant when the attachment was issued.

2. A new trial will be ordered if the party obtaining the verdict so conducts himself during the trial, by paying to the jurors unusual civilities and attentions, and treating and conversing with some of them, in such a manner and under such circumstances as to excite a violent suspicion that this was done for the purpose of influencing the verdict.

---

On rule to show cause why verdict should not be set aside.

The rule to show cause was argued before Justices ELMER, VAN DYKE, and BROWN, by *D. A. Depue* and *J. Vanatta*, for the plaintiff, and *J. G. Shipman* and *A. O. Zabriskie* for the defendant.

The opinion of the court was delivered by

ELMER, J. An attachment having issued out of this court on the 29th of June, 1861, at the suit of plaintiff against one Matthias Brakely, a debt or sum of two thousand dollars was attached as due to him by the present defendant, John Fulmer. Final judgment having been obtained against Brakely April 3d, 1862, for a sum exceeding this amount, a *scire facias* was issued against Fulmer, pursuant to the statute. Fulmer having appeared and pleaded that he was not indebted to Brakely, issue was thereon joined, and upon the trial a verdict was rendered for the defendant that he was not indebted to Brakely. A rule to show cause why the verdict should not be set aside and a new trial ordered, having been allowed, two reasons for making it absolute have been relied on.

*First.* It was insisted that the judge erred in admitting the defendant to produce evidence that in point of fact he was not indebted to Brakely at the time the attachment was issued. The argument urged was, that the defendant, by his own admissions and declarations to the officers of the bank, and on the faith of which the writ of attachment was sued out, was estopped from denying his indebtedness to be what he had stated.

It is a sufficient answer to this that the evidence in regard to the admissions was conflicting, and was not of such a char-

acter as to require the judge to decide that there was an estoppel. Giving the declarations their full force, the most that could be claimed for them on the part of the plaintiff was, that it should have been submitted to the jury to decide whether the admissions were such as, under the circumstances of the case, were intended or were in their nature calculated to induce the officers of the bank to act upon them, and upon which they did in fact so act, as materially to injure the bank, and so that it would be unjust and fraudulent to set up the real facts of the case, and thus prevent the plaintiff from rendering the defendant liable to pay the amount he had said he owed Brakely. Instead of being asked to submit these questions to the jury, the judge was asked to · decide them himself and to overrule all evidence tending to show what that indebtedness really was.

But I am clearly of opinion that if those questions had been submitted to the jury they were fully warranted by the evidence in returning the verdict they did, if they were satisfied, as upon this inquiry we must assume, that after duly considering all the evidence, including the admissions, the defendant was not in fact indebted to Brakely when the attachment was issued. We have not been asked to interfere with the verdict on the ground that in this respect it was against the weight of the evidence.

The admissions relied on were that Fulmer, who had large transactions with Brakely and was connected with him in dealing with the bank, in various conversations which he had on the subject of said transactions, and dealing with the cashier and individual directors previous to the issuing of the attachment and "up to a very short time before it was issued," told him he was indebted to Brakely to an amount sufficient to pay at least all Brakely owed the bank, with the amount and circumstances of which he was well acquainted. The cashier also stated that in consequence of these admissions he was induced to have the writ issued; but it did not appear that the intention to do it was communicated to Fulmer, or that when he made the admission he had any

Phillipsburgh Bank v. Fulmer.

reference to such a proceeding. Now waiving the uncertainty as to the time when the admissions were made, and the possibility, not to say probability, that the defendant's indebtedness to Brakely, which at times was large, had been discharged by *bona fide* transactions between them or by Brakely having in good faith parted with Fulmer's negotiable notes which he held after the declarations were made and before the attachment was issued, of which there was evidence that may have satisfied the jury; but taking the facts stated most strongly against the defendant, I think there was no such an estoppel as required a verdict for the plaintiff. At most the injury to the bank amounted only to rendering it liable to pay the costs of a further proceeding on the *scire facias*. Salutary as is the doctrine of *estoppel in pais*, as a preventive of fraud when confined within reasonable limits, no case has ever gone so far as to render a man liable to pay a debt of two thousand dollars which he did not owe, because in consequence of his false statements that he did owe it, a suit was commenced against him, a failure to sustain which would throw the costs on the plaintiff.

To constitute an *estoppel in pais* there must be an admission intended to influence, or of such a nature as will naturally influence the conduct of another and so change his condition as materially to injure him, if the party making it is allowed to retract it. And the estoppel must not be carried beyond the limits of the injury, so as instead of preventing a fraud, the enforcement of it will produce a greater injury than it was intended to prevent. *Den* v. *Baldwin*, 1 *Zab.* 403; *Pickard* v. *Sears*, 6 *Ad. & El.* 469; *Gregg* v. *Wells*, 10 *Ad. & El.* 90; *Dazell* v. *Odell*, 3 *Hill* 219; *Dewey* v. *Bordwell*, 9 *Wend.* 65; *Preston* v. *Mason*, 25 *Conn. R.* 118; *Taylor* v. *Ely*, *Ib.* 251; *Johns* v. *Church*, 12 *Pick.* 307; *Bursley* v. *Hamilton*, 15 *Pick.* 42; *Deweys* v. *Field*, 4 *Metc.* 384.

The cases relied upon by the plaintiff's counsel do not carry the doctrine of estoppel to the length now insisted on.

In *Pres. Church* v. *Williams*, 9 *Wend.* 147, the defendant, in an action of ejectment to recover possession of premises for non-payment of rent, who had declared he had no goods to distrain, was held precluded from setting up the fact that he had such goods, to defeat the ejectment; but that the rent was due was not disputed, so that the estoppel had reference only to the form of the remedy. In *Hall* v. *White*, 3 *Carr. & P.*, a *nisi prius* case, the action was detinue for certain deeds which the defendant had in his letters admitted to be in his possession, and the fact disputed was only whether he had the control of them. In *Martin* v. *Richter*, 2 *Stockt.* 510, the admissions were held to have induced the party to whom they were made, to suppose a certain amount was due on a bond and mortgage, for which, in consequence of the admissions, he gave value, and it was decided they precluded the person making them from setting up a release. In *Insurance Co.* v. *Woodruff*, 2 *Dutcher* 546, the action was covenant upon a sealed policy, to which there was a plea of *non est factum*. The admission that the policy had been sent to the plaintiff was held to be conclusive on the company upon the question of delivery, there being no question that the premium had been paid and a policy agreed to be issued; and if the policy was not actually delivered the plaintiff was entitled to his remedy, either by an action of trover or a bill in chancery.

In the case before us, it was not alleged that the bank or its officers had acted upon the admissions in giving credit to Brakely, or so as in any way to change their securities or to affect any rights of action to which resort might be necessary. The sole injury complained of was the liability to costs in consequence of the verdict. If the estoppel could be so used as merely to charge the defendant with costs, or if it was sought to be applied merely to prevent the plaintiff from being turned round to another form of action, it would be a legitimate use of it; but so to apply it as to charge the defendant with the payment of a large sum of money he does not owe, which, if the principle is correct, might as well be twenty

thousand as two thousand dollars, to save the plaintiff a few dollars of costs, is to make it the means of working, and not of preventing, a serious injury.  If this should be allowed, I do not see why the defendant's admissions to the plaintiff in an ordinary suit may not be claimed to have the same effect, which certainly has never been held.  It is true that the bank was a stranger to the transactions between Brakely and Fulmer; but when, by means of the *scire facias*, the plaintiff sought to render the latter liable to the bank for the debt it was alleged he owed to Brakely, the plaintiff assumed Brakely's place, claimed his rights, and became subject to his equities.  The issue tried was, not what claims the bank had against Fulmer, but to what amount, if any, was Fulmer indebted to Brakely.  I am clearly of opinion that there was no such an estoppel as should have prevented the jury from rendering the verdict they did, and this reason for a new trial has failed.

The other ground relied on for setting aside the verdict and allowing a new trial was, that the defendant and his two sons, who were his main witnesses, and who took up their quarters in different houses of entertainment frequented by the jury, improperly interfered with several of the jurors during the progress of the trial.  Considering the great importance of jealously guarding the jury against improper influences, and the reason there is to fear that the practice of endeavoring thus to procure a favorable verdict is becoming more and more prevalent and dangerous, I am of opinion that enough suspicion has been thrown on the conduct of the defendant and his sons to make it our duty to interfere and to afford the plaintiff, if it is desired, the opportunity to submit the matter in dispute to another jury.  It does not distinctly appear that there were private conversations with jurors on the subject of the cause; but it does appear that unusual civilities and attentions were paid to several of them, and they were treated more than once, and that this was done in such a manner and under such circumstances as to render it in the highest degree probable that it was not done inadvertently and only

so far as was called for by the ordinary proprieties of life, but for the express purpose of influencing the verdict. There is no danger that we shall err in requiring of parties carrying on a trial at the circuit, the most scrupulous care to avoid even the appearance of adopting undue means of insuring success. When they are found so conducting as to excite a violent suspicion, as in this case the defendant did, that he was wilfully guilty of incorrect conduct, he has only himself to blame if the expense and trouble of another trial is visited upon him, so that justice may not only be fairly administered, but that it may be so administered as to escape all reasonable suspicion of being perverted.

In my opinion there should be a new trial, the costs to abide the event.

New trial granted.

CITED in *Campbell* v. *Nichols et al.*, 4 *Vroom* 88; *State, Newark, pros.*, v. *Sayre*, 12 *Vroom* 160; *Carpenter* v. *Easton and Amboy R. R. Co.*, 9 *C. E. Gr.* 259.