THE WARNER GLOVE COMPANY *vs.* WILLIAM H. JENNINGS, JR.

New London Co., May T., 1889. ANDREWS, C. J., CARPENTER, LOOMIS, BEARDSLEY and F. B. HALL, Js.

A debtor on the eve of insolvency may prefer certain creditors, by paying them money or transferring to them property, if it is done in good faith—the transaction remaining valid unless set aside by proceedings under the insolvent law.

In the absence of such proceedings neither the knowledge of the creditor that his debtor is insolvent, nor the fact that such acts are calculated to place the property of the debtor beyond the reach of his creditors, will of themselves render such *bonâ fide* transaction void or fraudulent in law.

A trader who was insolvent and threatened with suits by his creditors, sold his entire stock of goods for cash and placed five hundred dollars in the hands of the defendant, who was a mortgage creditor, under an agreement that he should, if possible, effect a settlement with his merchandise creditors (the debtor providing otherwise for certain loans from

friends) for twenty-three per cent. of their claims, the debtor to supply him with what more money was necessary to make this amount, he paying all such creditors as would take that percentage in full, and retaining and applying on his own claim whatever was left. The defendant deposited the five hundred dollars in bank with his own funds, and had paid out a part of it to creditors when he was factorized by a non-assenting creditor as having the money of the debtor in his hands. At this time he had paid all the creditors who would accept the percentage offered; about half refused it. No proceedings in insolvency had been instituted. Held—

1. That in the absence of any finding that the arrangement was entered into with the object of placing the debtor's property beyond the reach of his creditors, or of delaying or defrauding them, the court could not presume any such fraudulent intent, but must regard the arrangement as a business transaction entered into by the parties in good faith.

2. That the defendant was not holden for what he had paid out to assenting creditors, as the debtor had a right to prefer creditors, subject only to invalidating proceedings under the insolvent law.

3. That he was not holden for the balance left in his hands, as at the time of the service of the factorizing process upon him the event had happened which gave him the right to retain this balance, and he had actually appropriated it.

The facts constituting a transaction claimed to have been fraudulent being fully stated and no corrupt motive or fraudulent purpose having been found, the question whether the transaction was fraudulent becomes a question of law.

A finding, after setting forth the facts, concluded as follows:—I find that the arrangement was calculated to, and did in fact, delay the plaintiffs and other non-assenting creditors, and was calculated to place the debtor's property beyond their reach and to defraud them. Held to be a conclusion of law upon the facts, which could be reviewed by this court.

An estoppel is intended as a protection to the party setting it up against loss, and not as a means of gain to him.

Where the only action to which a creditor was led by a representation that the party had funds of the debtor in his hands, was the institution of a suit against the debtor and the service of a factorizing process on the party making the representation, it was held not enough to create an estoppel against a denial by the garnishee that he had such funds in his hands.

[Argued May 29th—decided September 9th, 1889.]

SCIRE FACIAS upon a process of foreign attachment in which the defendant was garnisheed as having in his hands moneys of one Haskell, the debtor of the plaintiffs; brought to the Court of Common Pleas of New London County, and tried to the court before *Crump*, *J.* Facts found and judg-

ment rendered for the plaintiffs, and appeal by the defendant. The case is fully stated in the opinion.

*S. Lucas*, with whom was *W. H. Jennings, Jr.*, for the appellant.

1. It appears by the record that the money placed in the defendant's hands was, by an arrangement made between him and Haskell, to be applied in a specific manner. If it had not been thus applied and creditors had not intervened, Haskell could have insisted upon that application, and so might any creditor for whose benefit it was thus placed. Any other disposition of the money by the defendant would have been a wrongful conversion of it. The money being deposited for a specific purpose, the defendant held it in trust for that purpose, and when actually paid out by him in accordance with the terms of such trust, his liability therefor ceased. This court has fully recognized and approved this principle of law. *Harvey* v. *Mix*, 24 Conn., 406. See also *Nostrand* v. *Atwood*, 19 Pick., 281.

2. The record discloses the fact that all the creditors who would accept of the percentage had been paid, and all the others had refused to accept when the garnishee process was served. The money in the defendant's hands had therefore become denuded of that portion of the trust that required him to pay the money to the creditors, and he had not only the right, but it was his duty, to apply the balance in liquidation of the indebtedness of Haskell to him. Hence the money was not subject to garnishment, for the attaching creditor does not acquire any greater rights against the garnishee than the defendant in the suit possesses. Drake on Attach., §§ 458, 462, 660, 672, 691; *Harris* v. *Phœnix Ins. Co.*, 35 Conn., 310; *Curtis* v. *Alvord*, 45 id., 569; *Fuller* v. *Foote*, 56 id., 341.

3. The record states—"I find that the arrangement was calculated to and did in fact delay the plaintiffs and other non-assenting creditors and was calculated to place Haskell's property beyond their reach and to defraud them." This is only a conclusion of law, not a finding of fact. The court

does not find any fraud in fact, and none will be inferred by this court.  Kerr on Fraud & Mistake, § 207 ; *Dwight* v. *Brown*, 9 Conn., 83 ; *Weeden* v. *Hawes*, 10 id., 50 ; *Argall* v. *Cook*, 43 id., 160 ; *Hayden* v. *Allyn*, 55 id., 280.

4.  There being no actual intent to defraud creditors, but simply an arrangement to pay conditionally one creditor in preference to another, and prefer one over the others, the court erred in holding the arrangement void, and depriving the defendant of his right of application of the money to Haskell's indebtedness to him.  The condition of the parties at the time of service of the garnishee process governed, independently of the arrangement.  At that time the defendant owed nothing.

*C. F. Thayer*, with whom was *J. M. Thayer*, for the appellees.

Haskell put $500 into the defendant's hands prior to the service of the factorizing process.  The plaintiffs' attachment of the money was not dissolved by any assignment within sixty days after service was completed, but the defendant, to defeat it, relied upon an agreement with Haskell under which he had paid certain of Haskell's creditors $256.09, and had appropriated the balance to expenses and in part payment of his own secured claim.  The plaintiffs brought suit, relying on the statement which the defendant sent them, that he had $1,300 of Haskell's money in his hands, and only learned of the defendant's secured note and the secret arrangement for its payment on the trial.  The court held the whole arrangement between Haskell and the defendant to be void *in toto* as against non-assenting creditors ; and the question is whether the court erred in so holding.

1.  The bare statement of the arrangement discloses an intent to withdraw Haskell's property from his creditors, and the finding shows that the defendant insisted that the scheme was so artfully devised that the money was beyond reach of legal process from the moment it came into his hands.  Such an intent constitutes a legal fraud.  *Gaylord* v. *Couch*, 5 Day,

223; *Fox* v. *Hills*, 1 Conn., 295; *Whittlesey* v. *McMahon*, 10 id., 137; *Beers* v. *Botsford*, 13 id., 146; *Pettibone* v. *Stevens*, 15 id., 19; *Abbe* v. *Newton*, 19 id., 20; *De Wolf* v. *Sprague Mfg. Co.*, 49 id., 282; *Wheelden* v. *Wilson*, 44 Maine, 11; *Blodgett* v. *Chaplin*, 48 id., 322; *Hooper* v. *Hills*, 9 Pick., 435; *Kimball* v. *Thompson*, 4 Cush., 441. And an intent to delay creditors is presumed from a transfer which does delay them. In all such cases the party must be held to have intended that which is the necessary consequence of his act. Wait on Fraud. Con., §§ 9, 196, 197, 322; *Knight* v. *Goodyear Glove Mfg. Co.*, 38 Conn., 438; *Ingersoll* v. *Barker*, 21 Maine, 474. A man's omissions as well as his actions furnish evidence of his motives. When, therefore, things which ought to have been done in prudence as well as candor are not done, we find reason to suppose that there is something more intended than avowed. SMITH, J., in *Burd* v. *Smith*, 4 Dallas, 76. The defendant's letter to the creditors shows a clear attempt to coerce them into a relinquishment of a part of their claims in order to receive any part of his property, and such an attempt was a fraud upon them. Perry on Trusts, § 592; *Ingraham* v. *Wheeler*, 6 Conn., 277; *Pettibone* v. *Stevens*, *supra;* *Hooper* v. *Hills*, *supra;* *Hyslop* v. *Clarke*, 14 Johns., 458. The defendant may not have intended to perpetrate a moral fraud, but he participated in an attempt to withhold the property of an insolvent debtor from his creditors, knowing the fact of his insolvency, and even if innocent in the beginning, he has become guilty by maintaining instead of repudiating the, scheme. Wait on Fraud. Con., § 201; *Hawes* v. *Mooney*, 39 Conn., 37; *Bassett* v. *McKenna*, 52 id., 437; *Laughton* v. *Harden*, 68 Maine, 208. It is not necessary to prove actual fraudulent intent. *Salmon* v. *Bennett*, 1 Conn., 525; *Beers* v. *Botsford*, *supra;* *Pettibone* v. *Stevens*, *supra;* *Abbe* v. *Newton*, *supra;* *Paulk* v. *Cooke*, 39 Conn., 566; *Hooper* v. *Hills*, *supra*. The secret understanding between Haskell and the defendant was favorable to both and prejudicial to Haskell's creditors. Dissenting creditors were in their power and were morally certain to receive nothing. Perry on Trusts, §§ 590, 591, 592; Wait on Fraud.

Con., § 328; *Burd* v. *Smith*, *supra;* *De Wolf* v. *Sprague Mfg. Co.*, *supra.* The arrangement reserving to Haskell the right to have the shares of dissenting creditors applied on his note and his wife's property thereby relieved of incumbrance, was also fraudulent. Perry on Trusts, § 591; *Austin* v. *Bell*, 20 Johns., 442; *Burd* v. *Smith*, *supra.* The agreement that the fund might be used in defending suits to be brought by creditors was fraudulent. Wait on Fraud. Con., § 318; *Smyth* v. *Ripley*, 33 Conn., 306. Especially so where the insolvent debtor's attorney is made his assignee, for this not only tends directly to the impairment of the fund, but it places the attorney in two inconsistent positions. Wait on Fraud. Con., § 335. For these reasons it is submitted that the court correctly ruled that the arrangement was void *in toto*, and that, as against Haskell's creditors, the money in the defendant's hands was Haskell's and subject to legal process. *Owen* v. *Dixon*, 17 Conn., 492.

2. While it seems that all the other questions raised were settled in *Hawes* v. *Mooney*, 39 Conn., 37, it may still be claimed that judgment should have been rendered, if at all, for only the difference between $500 and $256.09. But there was no evidence to prove that the money received by the defendant was ever paid out, and, it having been proved that $500 was placed in his hands, the same money will be presumed to remain with him until the contrary is shown. 1 Greenl. Ev., § 41; *Gray* v. *Finch*, 23 Conn., 513; *Donahue* v. *Coleman*, 49 id., 495; *Bennett* v. *Agricultural Ins. Co.*, 51 id., 504. It is also to be presumed that the defendant's "own check drawn against his individual bank account" was paid with his individual funds. And having mingled the fund with his own, every part of the blended property which he cannot identify as his own is open to attachment. Perry on Trusts, § 447.

3. The defendant was estopped to prove a fact contrary to his written statement, upon which the plaintiffs relied in bringing their suit, and the court erred in allowing him to prove that any sum came into his hands less than twenty-three per cent of Haskell's indebtedness. The judgment

is therefore right in amount, and substantial justice has been done.

F. B. HALL, J.   Henry E. Haskell, being insolvent and having been threatened with suits by his creditors, sold his entire stock of goods for cash and placed $500 of the avails of the sale in the hands of the defendant.

At the time of the sale Haskell was indebted to his merchandise creditors in about the sum of $2,350 ; to relatives and friends, for money loaned, in about $3,150 ; and was liable as joint maker with his wife, upon a note of $600, fully secured by mortgage upon his wife's property; which note and mortgage were owned by the defendant.

Said sum of $500 was placed in the defendant's hands under the following circumstances and agreement :—Haskell was to place in the defendant's hands twenty-three per cent. of the sum due his merchandise creditors ; the defendant was to send to these creditors a statement of Haskell's affairs, offering them twenty-three per cent. in full of their claims; to pay that percentage to such of them as would accept the same in full; to pay therefrom his own fees and disbursements, and to apply the balance, if any remained, upon said note of $600.   Haskell was to personally settle with the creditors whose claims were for money loaned.   Under this agreement the defendant received the $500 and deposited it in the bank with his own funds.

On the 6th of February, 1888, the defendant sent to the plaintiffs, and to Haskell's other merchandise creditors, a statement of all Haskell's debts (excepting said note due the defendant), amounting to $5,500, and of his assets, described in the statement as " about $1,300 cash on hand now in his " (Haskell's) " possession."   Accompanying each statement was a letter signed by the defendant, as attorney at law, stating that Haskell had placed in his hands the money to pay twenty-three per cent. of his debts, as shown by the statement, asking each creditor if he would accept twenty-three per cent. in full of his claim, stating that, if he would, the writer would send him a check for that amount, and that

if he would not, insolvency would follow, which meant nothing for the creditors.

Acting upon the information thus gained, the plaintiffs, on the 21st of March, 1888, commenced suit against Haskell, and garnisheed the defendant, who then disclosed to the officer that he was not indebted and had no funds of Haskell in his hands.

At the time of the service of the copy, twelve of the merchandise creditors had accepted the compromise offer, and the defendant had paid them by his check $256.09. The others had refused to accept the offer.

Upon these facts the plaintiffs, in the action of *scire facias* based on the factorizing process, claim—

First, that the agreement or arrangement between Haskell and the defendant was fraudulent, and that therefore, at the time of the service of the copy in foreign attachment, the entire $500 was subject to attachment in the defendant's hands.

Second, that if not chargeable with the entire $500, the defendant should be held to have been indebted at that time to the amount of the sum remaining in his hands, that is, to the amount of the difference between $500 and $256.09 already paid by the defendant to the assenting creditors.

Third, that by reason of the statements in the letter of February 6th, the defendant is estopped from denying that $1,300 was in fact placed in his hands by Haskell.

The Court of Common Pleas sustained the first of these claims, and rendered judgment for the plaintiffs for $280.14 and costs.

Whether the transaction in question was fraudulent is upon the finding of the court a question of law. Having fully set forth the facts the language of the finding is—" I find that the arrangement was calculated to, and did in fact, delay the plaintiffs and other non-assenting creditors, and was calculated to place Haskell's property beyond their reach and to defraud them." This must be regarded as a legal conclusion upon the facts found, and not a finding of actual fraud from the proof presented to the court. The facts forming

the alleged fraudulent transaction having been fully stated, and no corrupt motive, no fraudulent purpose, having been found, the inquiry whether the transaction itself was fraudulent becomes one of law. *Beers* v. *Botsford*, 13 Conn., 153; *Pettibone* v. *Stevens*, 15 id., 25. " This is not," said WILLIAMS, C. J., in the case last cited, " a question of actual fraud, but whether the transaction is not one of the kind calculated to delay, hinder or defraud creditors ; " that is, calculated in law to so delay, hinder and defraud creditors.

The Court of Common Pleas having failed to find that the arrangement in question was entered into with the object or purpose of placing Haskell's property beyond the reach of his creditors, or of in any manner delaying or defrauding them, this court cannot presume such fraudulent design, but must, upon the facts found, treat the arrangement as a business transaction entered into by the parties in good faith. *Weeden* v. *Hawes*, 10 Conn., 54; *Sisson* v. *Roath*, 30 id., 16.

Assuming then that there was no actual fraud, no intention to cheat the creditors of Haskell, is the transaction fraudulent in law ?

It is true that by the arrangement Haskell intended to prefer the assenting over the non-assenting creditors to the extent of twenty-three per cent. of their claims, and to prefer the defendant by paying to him the shares of the non-assenting creditors, and that the effect would be, at least after the assenting creditors had been paid by the defendant, and he had appropriated the shares of those refusing, to place the funds of Haskell beyond the reach of his creditors, and to hinder them in the collection of their claims.

But a debtor on the eve of insolvency may prefer one or more of his creditors by payment of their claims, either in money or by the transfer to them of property, if such payment is made in good faith. In the absence of proceedings under the insolvent law, neither the knowledge of the creditor of his debtor's insolvency, nor the fact that such acts are calculated to place the property of the debtor beyond the reach of his creditors and hinder them in the collection of their claims, will of themselves render such *bonâ fide* trans-

actions void or fraudulent in law.   *Meade* v. *Smith,* 16 Conn., 358 ; *Kirtland* v. *Snow,* 20 id., 27.

To quote the language of this court in *Kirtland* v. *Snow*— " There is no more objection to a creditor's purchasing his debtor's property and applying it in payment, than there is to securing himself by legal process.   The fact therefore that the effect of this transaction was to put the property beyond the reach of other creditors is of itself of no importance."

Were the plaintiffs by the present action to succeed in collecting their claim, the result would be to remove Haskell's funds from the reach of the remaining creditors, and hinder them in the collection of their claims.

By the arrangement in question Haskell intended to immediately devote the entire sum placed in the defendant's hands to the payment of his creditors.   Upon the refusal of creditors to accept twenty-three per cent. in full, the portion of such refusing creditors, less the reasonable expense of executing the trust, which is properly allowed, was to be immediately appropriated by the defendant and applied upon his valid claim against Haskell, exceeding in amount the entire sum placed in the defendant's hands.   Haskell had parted with all control over the money.   The facts disclose no secret trust or reservation for the benefit of Haskell, no contingency upon the happening of which any part of the money would revert to him.   As the defendant was in this case himself a creditor, we think, upon these facts, that the transaction cannot be regarded as fraudulent in law, so as to enable the plaintiffs in this action to recover after a full performance by the defendant, in good faith, of the terms of the arrangement.

Regarding the effect of such an agreement a different question would be presented had the defendant been copied before payment of the assenting creditors, or had such a fund been garnisheed in the hands of an assignee or trustee not himself a creditor of Haskell.

The case before us differs materially from *Hawes* v. *Mooney,* 39 Conn., 37, cited by the plaintiffs.   The law is in that

case expressly applied to a case of " actual and contemplated fraud, participated in by the defendant."

The second claim of the plaintiffs, that the defendant is chargeable with the sum remaining in his hands after payment of the assenting creditors, we think cannot be sustained. The event which gave the defendant a right to retain this sum, as part payment of his claim, had happened before service of the factorizing process upon him, and the defendant had actually appropriated the money.

The finding shows that before the service upon the defendant, all the non-assenting creditors had refused to accept the compromise, and that the defendant had deposited this money in the bank as his own funds. It is true the court finds that the defendant claimed the right to apply some part of the balance remaining in his hands in payment for services which he claimed to have rendered Haskell, but it is not found that any sum was due him for such services. We think the finding clearly shows that the defendant, having by the terms of the agreement the right to apply the balance of the fund in his hands in part payment of a valid claim against Haskell, had in fact availed himself of that right before service of the copy in foreign attachment.

Upon the plaintiffs' third claim, that the defendant is estopped from denying that thirteen hundred dollars was placed in his hands by Haskell, it may be questioned whether the defendant made such a representation by the letter of February 6th. By the letter it would appear that the entire sum of thirteen hundred dollars was in the defendant's hands, while by the statement which was inclosed and referred to in the letter it would seem that the thirteen hundred dollars was in the hands of Haskell. But regarding the letter and statement as intended to convey the impression that the defendant held Haskell's funds to the amount of thirteen hundred dollars, there is no evidence that the plaintiffs, by having believed this statement, have lost any remedy, or suffered any injury beyond the expense of the service of the copy upon the garnishee. At that time the defendant disclosed that he had no funds of Haskell's in

his hands. An estoppel is intended as a protection against loss, and not as a means of gain. *Townsend Savings Bank* v. *Todd*, 47 Conn., 190. The injury sustained by the expense of the service of the copy in foreign attachment is not a sufficient one to warrant the application of the doctrine of estoppel and to create a cause of action in the plaintiff's favor.

This subject, and the authorities sustaining this conclusion, are fully and ably discussed in the case of *Warder & others* v. *Baker*, 54 Wis., 49.

There is error in the judgment of the Court of Common Pleas, and it should be reversed.

In this opinion the other judges concurred; except AN-DREWS, C. J., who thought the plaintiffs were entitled to a judgment for the amount the defendant had in his hands at the time that service in the original suit was made upon him.