H. F. HUSTAD, Plaintiff and Respondent, *v.* LYMAN J. REED and MARIE C. REED, Defendants, and STEPHEN W. MOSHER and RICHARD M. MOSHER, Appellants.

No. 9592.

Submitted November 12, 1957. Decided February 17, 1958.

321 Pac. (2d) 1083.

214

Paul W. Smith, David R. Smith, J. Miller Smith, Chadwick H. Smith, Helena, J. Miller Smith, argued orally, for appellant.

H. J. Luxan, Jr., A. W. Scribner, Helena, H. J. Luxan, Jr. argued orally, for respondent.

THE HONORABLE PHILIP C. DUNCAN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY.

This is an appeal from a judgment in proceedings supplemental to execution under the provisions of R.C.M. 1947, Title 93, Chapter 59, wherein appellant garnishees, Mosher, were ordered to pay plaintiff Hustad the sum of $3,615.36 in satisfaction of a default judgment for $3,171.90, plus interest and costs plaintiff had against defendants Reed.

On April 9, 1952, plaintiff obtained the default judgment for treble rents in an unlawful detainer action. So far as appears from the record before the court nothing further was done until plaintiff had writ of execution issued January 25, 1955. Thereafter service of the writ and notice of garnishment was had upon Richard M. Mosher, Stephen W. Mosher, and the Union Bank and Trust Company on February 17, 1955, February 24, 1955, and March 1, 1955, respectively, attempting thereby to levy upon a legacy of $5,000 bequeathed to defendant, Marie C. Reed, by her late mother, Amelia H. Mosher. Garnishees Mosher answered in effect that Marie had assigned her share of the estate to the Union Bank and Trust Company, and the Bank answered in effect that it had an assignment of Marie's share of the estate in an estimated amount of $3,000 upon which it had advanced $2,200 plus interest. On June 1, 1955, plaintiff initiated the proceedings supplemental to execution and the matter was heard June 8, 1955. At the conclusion of the hearing on that day, the court pronounced orally from the bench its determination and formal written judgment was entered June 23, 1955.

From the court records and files of the estate of Amelia H. Mosher, deceased, which were considered by the trial court and are now before us, it appears that the estate was administered

in the same court in which the proceedings appealed from were had; that deceased died testate February 3, 1954; that her will was executed March 18, 1953; that on February 26, 1954, the will was admitted to probate and the deceased's two sons, Stephen W. and Richard M. Mosher, were appointed and qualified as the executors; that the will bequeathed $5,000 to decedent's daughter, defendant, Marie C. Reed, $100 each to two other children, and the residue of the estate to the two sons named; that the estate consisted of about $600 in money and about $45,000 in ranch property, chiefly lands and livestock; that on January 28, 1955, the executors filed their first and final account and their petition for final distribution and report accompanying the account showing, among other things, total receipts of $22,355.17, including $5,178.29 advanced by the executors, disbursements in the same amount with no cash on hand, no money paid in or disbursed for Marie or the two other legatees, the ranching property on hand for distribution, the terms of the will, and stating that the legatees and devisees were entitled to distribution of their respective shares of the estate, and praying that distribution be made; that on February 11, 1955, the Court entered its decree of settlement of final account and distribution finding, among other things, that the will bequeathed to Marie $5,000, to two others $100 each, and the residue of the estate to Stephen W. and Richard M. Mosher, that Marie was entitled to the sum of $5,000, the two other legatees to $100 each, that Stephen W. and Richard M. Mosher were entitled to the residue of the estate, but because there was no cash they should be required to advance the same to pay the three legacies, and then ordering, adjudging and decreeing that the final account was allowed, approved and settled, the sum of $5,000 was thereby distributed to Marie, two sums of $100 each were thereby distributed to the two other legatees, and all of the residue of the estate was thereby distributed in kind to Stephen W. and Richard M. Mosher.

From the evidence adduced at the hearing on June 8, 1955, it appears that until service of the writ of execution and notice

of garnishment on February 17, February 24, and March 1, 1955, on appellants Mosher and the Union Bank and Trust Company, none of them had any actual knowledge of the judgment against Marie C. Reed and her husband; that in September 1954, by three checks signed, "Mosher Livestock by Richard M. Mosher," each containing a notation on their face, "Partial Distribution Amelia H. Mosher Estate," a total of $2,000 was paid to Marie C. Reed; that on November 9, 1954, Marie C. Reed executed to Union Bank and Trust Company a written assignment of all of her interest in Amelia's estate and on the same day the executors accepted it in writing as to the balance of Marie's distributive share in the estate; that between November 9, 1954, and January 17, 1955, inclusive, the Bank paid to Marie C. Reed on the assignment a total of $2,200; that on March 4, 1955, Richard M. Mosher paid the Bank the $2,200, plus $6.96 accrued interest, and took a receipt therefor from the Bank made to himself and Stephen as co-executors of the estate; that the executors in February 1955, discovered for the first time a promissory note dated June 15, 1950, made by Marie C. Reed to Amelia H. Mosher for the principal sum of $3,931.42, plus interest at the rate of 2 percent per annum, payable on demand, and, as such executors, as of February 15, 1955, endorsed the note to themselves as individuals and credited therein the sum of $800; that the note was never mentioned in any inventory and appraisement or any of the other court records or files in the estate of Amelia H. Mosher, deceased.

There are a number of specifications of error, but they all resolve themselves into the question as to whether the district court had the power to make the judgment it did.

The judgment was made in proceedings supplemental to execution, as stated, and in this case was made pursuant to the authority of R.C.M. 1947, section 93-5906, reading:

"The judge or referee may order any property of a judgment debtor, not exempt from execution, in the hands of such

debtor or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment.''

It is well-settled in Montana that this statute may be made ▆▆▆▆ the basis of an order, such as we have here, only when the supplementary proceedings result in the discovery of property or assets in the hands of the third person which indisputably belong to the debtor. If the ownership of the property is in dispute the court is powerless and completely without jurisdiction to make an order directing its delivery to the creditor. If there is a denial, the office of the court is not to determine whether the deniel is good or bad, true or false, but may only invoke the provisions of R.C.M. 1947, section 93-5907, by ordering that an action be instituted to determine the fact in dispute, or discharge the garnishee. Wilson v. Harris, 21 Mont. 374, 54 Pac. 46; Johnson v. Lundeen, 61 Mont. 145, 200 Pac. 451; Brindjonc v. Brindjonc, 96 Mont. 481, 31 Pac. (2d) 725; Letz v. Letz, 123 Mont. 494, 215 Pac. (2d) 534.

Plaintiff admits the correctness of these rules but asserts that they are inapplicable here, maintaining that where a denial is based on fallacious legal reasoning or the undisputed facts disclose an indebtedness there is no denial at all, citing Finch v. Finch, 12 Cal. App. 274, 107 Pac. 594, 598; Milliken v. Mannheimer, 49 Minn. 521, 52 N.W. 139; Davis v. Spencer, 87 Mont. 12, 285 Pac. 193.

Plaintiff initially contends appellants Mosher did not deny the indebtedness of the estate to Marie C. Reed, but in fact confessed it and attempted to assert a personal claim against her as justification for their refusal to comply with the writ. Plaintiff bases this assertion upon the circumstance that the records of the estate show that no money was advanced to the estate to pay Marie's legacy or paid direct from the estate to her for that purpose, and the various documents filed with the court by appellants and entered by the court in the distribution proceedings show the estate owed Marie the bequest on entry of the decree of distribution, and the evidence at the hearing was that all payments made to Marie were paid personally by appel-

lants from their separate funds prior to decree and none from the estate thereafter.

One answer to this is that plaintiff's argument presupposes that appellants' personal claim against Marie does not attach to or involve the indebtedness of the estate to Marie on account of the legacy, or, if it does, it is inferior as a matter of law to that of plaintiff thereto; a supposition that is erroneous. Appellants' claim against the indebtedness due from the estate to Marie is superior under well-recognized principles of law.

First, the evidence is undisputed that appellants had no actual knowledge of the judgment against Marie until service of the writ, which was after decree of distribution. As to any assertion that the judgment itself constituted a lien prior in time to any claim of appellants on the indebtedness of the estate to Marie for her legacy, or operated in some other chimerical way, as by constructive notice to appellants, so as to give plaintiff a superior right to the indebtedness, attention is called to the only relevant statutes, R.C.M. 1947, sections 93-5708 and 93-5710, declaring the effect of docketed judgments. The only lien created is against the real property of the debtor and it follows that any incident of constructive notice would apply only to real property. Here only personal property is involved, the indebtedness of the estate to Marie and plaintiff had no possible lien or claim against it enforceable even against Marie until service of the writ of execution.

Second, the general rule is that a creditor stands in exactly the same relation to a garnished fund that the judgment debtor does and can enforce only such rights as the debtor might enforce. 12 R.C.L. section 8, page 778. This applies to creditors of legatees, heirs or devisees. In re Bennett's Estate, 13 Cal. (2d) 354, 90 Pac. (2d) 84, 126 A.L.R. 771; Streety & Co. v. McCurdy, 104 Ala. 493, 16 So. 686; Fiscus v. Moore, 121 Ind. 547, 23 N.E. 362, 7 L.R.A. 235; Rice v. Bradley's Trustee, 159 Ky. 293, 166 S.W. 1013; Strong's Executor v. Bass, 35 Pa. 333; Henshaw v. Whitney, 11 Gray, Mass., 223. ''An attaching creditor, and the same rule applies respecting a judgment

creditor, takes only such rights or interest as his debtor had at the time of the service of the writ of attachment.'' In re Bennett's Estate, supra, 13 Cal. (2d) at page 364, 90 Pac. (2d) at page 89. ''The rights of an attaching creditor or of an assignee of a distributee, with or without notice of the distributee's indebtedness to the estate, are no better than those which the distributee would have had if his distributive share had not been attached or assigned.'' In re Miller's Estate, 189 Or. 246, 252, 218 Pac. (2d) 966, 968, citing Stanley v. United States National Bank, 110 Or. 648, 224 Pac. 835; Annotations, 1 A.L.R. 1034; 75 A.L.R. 886; 21 Am. Jur., Executors and Administrators, section 463, page 641.

Third, the evidence is that Marie was indebted to her mother's estate in an amount in excess of $3,900, as shown by the promissory note before mentioned, and this debt was in existence in September 1954, at the time appellants paid Marie the three payments totaling $2,000. Under R.C.M. 1947, section 91-3201, it is made the statutory duty of executors to collect all debts due decedent or the estate. Virtually all authorities hold that it is the right and duty of executors and administrators to retain a legacy or distributive share from a debtor to the estate and apply it to the indebtedness. This is sometimes called, ''right of retainer,'' and applies the claim of a creditor of the legatee or distributee, even though such claim has been reduced to judgment, as here. 34 C.J.S. Executors and Administrators section 494, page 390; 21 Am. Jur., Executors and Administrators, section 450, page 634, and section 465, page 642; In re Miller's Estate, supra; Annotations, 1 A.L.R. 993; 30 A.L.R. 775; 110 A.L.R. 1385; 164 A.L.R. 717. As stated by the Supreme Court of Oregon in Stanley v. United States National Bank, supra, 110 Or. at page 657, 224 Pac. at page 838, the law is:

''Indebtedness of a legatee or distributee constitutes assets of the estate, which it is the duty of the executor or administrator to collect for the benefit of creditors, legatees, and distributees. To the extent of his indebtedness withheld from

the estate by the legatee or distributee, the distributive share or legacy of the debtor, is regarded as having been paid, and his claim upon the estate satisfied *pro tanto,* and, where the amount of the indebtedness of the distributee or legatee exceeds the value of the legacy or distributive share, it extinguishes his title to the property of the estate in the hands of the executor or administrator available for distribution. Streety v. McCurdy, 104 Ala. 493, 16 So. 686; Webb v. Fuller, 85 Me. 443, 27 A. 346, 22 L.R.A. 177; Fiscus v. Moore, 121 Ind. 547, 23 N.E. 362, 7 L.R.A. 235; Holmes v. McPheeters, 149 Ind. 587, 49 N.E. 452; In re Lietman's Estate, 149 Mo. 112, 50 S.W. 307, 73 Am. St. Rep. 374; Armour v. Kendall, 15 R.I. 193, 2 A. 311; Oxsheer v. Nave, 90 Tex. 568, 40 S.W. 7, 37 L.R.A. 98; New v. New, 127 Ind. 576, 27 N.E. 154.'' In re Jackson's Estate, 200 Wash, 116, 93 Pac. (2d) 349, 123 A.L.R. 1281; People's State Bank of Harris v. Staley, 120 Kan. 650, 244 Pac. 1061; A.L.R. Annotations, supra.

Consequently, the amount owing by the estate to Marie at ██ all times was less than $1,100 and the payments made in September 1954, by appellants of $2,000 more than paid the bequest to Marie and more than satisfied it in full, and this is ignoring the additional $2,200 she received later from appellants through the Union Bank and Trust Company by way of assignment. The mere fact that Marie was paid by appellants out of their own funds does not entitle Marie to be paid again out of the estate. Justice dictates and the law is that where executors advance money from their private funds to a legatee, they become subrogated to the rights of that legatee in the estate. 34 C.J.S. Executors and Administrators section 491, pages 382, 384; 21 Am. Jur., Executors and Administrators, section 249, page 514. It is not necessary that the entire debt be paid by the executors alone, 50 Am. Jur., Subrogation, section 28, pages 701-702, section 30, page 704. Subrogation effects an assignment by operation of law and operates as an equitable assignment; actual assignment is not necessary, 50 Am. Jur., Subrogation, section 4, pages 680, 681; 83 C.J.S.

Subrogation section 14, page 612. The rights of a subrogee attach at the time he pays the debt, 83 C.J.S. Subrogation section 11, page 610. Property of one person is not subject to levy under execution against another person, 21 Am. Jur., Executions, section 387, page 190. It undeniably follows that, even though appellants paid Marie from their own private funds, appellants' claim against any indebtedness due from the estate to Marie is superior to that of plaintiff. See 34 C.J.S. Executors and Administrators section 491, pages 384-385; In re Bennett's Estate, supra.

Aside from the principle of subrogation, it is also the law that where an executor advances his own funds to pay a distributee his distributive share of an estate, the executor has the right of retainer or setoff against such distributive share to the extent of the advancement, and he has this right against an attaching creditor of the legatee. 34 C.J.S. Executors and Administrators section 494, pages 394-395; 21 Am. Jur., Executors and Administrators, section 456, page 637; A.L.R. Annotations, supra. It is true that there may seem to be some difference of opinion on this right of retainer or setoff, however, a study of the cases reveals that the apparent contrary holdings involve debts due the executor not connected with the estate proper. It has also been held in California that advancements by an executor create a lien against the distributee's distributive share of the estate. In re Guglielmi's Estate, 138 Cal. App. 80, 31 Pac. (2d) 1078. And R.C.M. 1947, section 45-201, provides, "Other things being equal, different liens upon the same property have priority according to the time of their creation." There is no question here but that the appellants' claim against the indebtedness of the estate to Marie, whether it be that of a lien, right of retainer or setoff, or equitable ownership by subrogation, is prior in time to that of plaintiff, and so superior.

Another answer may be made to plaintiff's first contention by disregarding appellants' September payments of $2,000, and that is that the evidence shows Marie had assigned

to the Union Bank and Trust Company her bequest and had actually received thereon $2,200 prior to levy of execution. This assignment and payment by the Bank to Marie on account thereof more than covered any money due from the estate to Marie on her bequest, considering her prior indebtedness to the estate, all as heretofore commented on, and any indebtedness owing by the estate on the bequest belonged to the Bank by virtue of the assignment antedating the writ and not to Marie herself, thus appellants had nothing of Marie's upon which plaintiff could levy execution and appellants' answers to the garnishment were correct.

Some argument has been made that advance payments on ▇▇▇ bequests may be made only after obtaining authority of the court. This is without basis. Advance payments may be made to legatees without previous authorization. In re Bennett's Estate, supra; 34 C.J.S. Executors and Administrators section 491, page 382, and see In re Bradfield's Estate, 69 Mont. 247, 221 Pac. 531; In re Estate of Murphy, 57 Mont. 273, 188 Pac. 146. This is particularly true of a stranger to the estate, such as plaintiff, for an executor owes no duty to any creditor of any distributee. 21 Am. Jur., Executors and Administrators, section 481, page 651; 4 Am. Jur., Attachment and Garnishment, section 420, page 815; In re Bennett's Estate, supra; American Agr. Chemical Co. v. Scrimger, 130 Md. 389, 100 A. 774, L.R.A. 1917F, 394.

The second contention of plaintiff is that under the provisions of R.C.M. 1947, section 93-1301-6, subd. 3, appellants are estopped from denying the debt because of the representations they made in the final account and petition for distribution showing no legacy advancements had been made and that Marie was entitled to be paid her $5,000 legacy.

The statute cited is the statutory declaration of the doctrine ▇▇▇ of equitable estoppel. City of Billings v. Pierce Packing Co., 117 Mont. 255, 161 Pac. (2d) 636; Lindblom v. Employers' etc., Assur. Corp., 88 Mont. 488, 295 Pac. 1007; Waddell v. School District, 74 Mont. 91, 238 Pac. 884.

In defining this doctrine this court in Mundt v. Mallon, 106 Mont. 242, 249, 76 Pac. (2d) 326, 329, and reiterated in City of Billings v. Pierce Packing Co., supra, said:

" 'Generally speaking estoppel arises when a party by his acts, conduct, or acquiescence has caused another in good faith to change his position for the worse. [Citing cases.] The following six essential elements have been held necessary to constitute an equitable estoppel: "1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it." ' " [117 Mont. 255, 161 Pac. (2d) 640.]

It is obvious that equitable estoppel has no application to ▌ this case. There is no showing whatever that plaintiff in any way changed his position for the worse or has suffered any loss. A garnishee is not estopped to deny indebtedness to the principal debtor even where he has directly admitted (which is not the fact here) to the garnishor before the proceedings that he was so indebted. Warner Glove Co. v. Jennings, 58 Conn. 74, 19 A. 239; Starry v. Korab, 65 Iowa 267, 21 N.W. 600; Sears v. Thompson, 72 Iowa 61, 33 N.W. 364;

Miller v. Anderson, 19 Mo. App. 71; Phillipsburgh Bank v. Fulmer, 31 N.J.L. 52, 86 Am. Dec. 193; Warder v. Baker, 54 Wis. 49, 11 N.W. 342, and see Hughes v. New York Life Ins. Co., 32 Wash. 1, 72 Pac. 452. Likewise, there is no showing that appellants intended or expected plaintiff to act upon any of the representations in their account and petition. The evidence is that appellants had no knowledge, actual or constructive, of the judgment against Marie and so they could not have intended or expected any sort of action from plaintiff. Further, plaintiff had his judgment on April 9, 1952. On February 26, 1954, the will was admitted to probate, after due notice, in the same county where plaintiff resided and in the same court where the judgment was obtained and these proceedings were instituted, and it was not until September 4, 1954, that any money at all was advanced to Marie on her legacy, other than the indebtedness she owed the estate. Plaintiff had at least six months within which to make a levy. He was dilatory, and through no fault of appellants. Additionally appellants owed no duty to plaintiff. An executor owes no duty to any creditor of any distributee. He need not ascertain such creditors nor notify them of his intention to distribute property of the estate, and he assumes no risk, so far as they are concerned in paying the distributees before the passing of an account. 21 Am. Jur., Executors and Administrators, section 481, page 651; 4 Am. Jur. Attachment & Garnishment, section 420, page 815; In re Bennett's Estate, supra; American Agr. Chemical Co. v. Scrimger, supra.

The third question of plaintiff is that under the provisions of R.C.M. 1947, sections 93-1301-6, subd. 6, 93-1001-20, 91-3902, and 91-3516, the "Decree of Settlement of Final Account and Distribution of Estate" has become final and conclusive and cannot be collaterally attacked.

Assuming that it is true that the decree is conclusive and ▮▮▮ cannot be collaterally attacked in this proceeding, an unjustified assumption as will later be demonstrated, it is also true, that, "That only is deemed to have been adjudged in a

former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto.'' R.C.M. 1947, section 93-1001-23, and that a judgment or final order in an action or proceeding is not evidence, conclusive or otherwise, of matters that were not involved in the proceeding and not determined. 29 Cal. Jur. 2d, Judgments, section 237, page 197.

As to that portion of the estate proceedings wherein appellants show no receipts or disbursements on account of the bequest to Marie and allege that they have made a true statement of all receipts and disbursements on account of the estate, and the court approves the same in its decree, it is to be remembered that no money was ever received or disbursed by the estate on account of the bequest to Marie. The indebtedness of Marie to the estate was not money, and the money that was paid to her, either by appellants in September 1954, or by the Bank later on, was not estate money. It was money belonging to those that paid it. It was not advanced to the estate nor paid out by the estate. True, Marie received it as an advance on her bequest, but, from whatever amount the estate owed her on her bequest, the Bank had the right, superior to that of the plaintiff, to be repaid by the estate by virtue of the assignment it held, and appellants had the right, superior to that of plaintiff, to be repaid by the estate either by rights incident to subrogation, retainer, or lien, all as heretofore discussed and determined. The result is that we do not have on any of these points anything contrary to their determination by the decree and which may be said to constitute a collateral attack.

The balance of the decree here concerned merely finds that the will bequeathed to Marie $5,000, that Marie is entitled to $5,000 by reason thereof, that appellants shall be required to advance the same because they are residuary distributees, and then orders, adjudges, and decrees that the sum of $5,000 is thereby distributed to Marie. At no place is it adjudged that payment of the legacy has not already been made to Marie,

either by way of her existing indebtedness to the estate or by payment by others who have succeeded to her rights, or by both, or that others have not succeeded to her rights or have liens or other prior claims thereon, all of which we have already seen is perfectly proper, nor was such actually and necessarily included in the decree or necessary thereto. It was only necessary for the court, under the facts before it, to decree that Marie's legacy be distributed. The will bequeathed it to her. All creditors and expenses of administration had been paid. There was no contest and there was sufficient property left in the estate to pay the legacy and the estate was otherwise in condition for final distribution. It is only under such circumstances that, generally speaking, a legatee becomes finally entitled to his legacy and it becomes necessary to a final closing of the estate to obtain a judicial determatiin thereof.

However, it is not necessary, nor even proper under the applicable statutes providing for decrees of distribution. R.C.M. 1947, sections 91-3901 and 91-3902, to adjudge whether the legacy has been paid or acquired by third parties by subrogation, retainer, assignment, or other method, or is subject to a lien, and it was not so adjudged here, and where a matter is not adjudicated there is no final and conclusive judgment that is being subjected to collateral attack or to estop appellants from asserting what appears to be the true state of affairs, namely: That Marie has been paid, not by the estate, but by others, plus her own indebtedness to the estate, and that these others have succeeded to the equitable and beneficial ownership of or have a lien on whatever was the balance owing on the legacy superior to any claim of plaintiff.

Respecting the fact of payment alone, the decree of distribution we have here and provided for by the statutes just mentioned does not concern itself therewith and is not the final order of the court on the point in the closing of an estate. That is the office of the decree of final discharge entered under authority of R.C.M. 1947, section 91-3906, when the execu-

tor finally delivers up to the court satisfactory proof of payment. We have already seen that advance payments may be made to a legatee without obtaining authority of court and that it is immaterial as to whether plaintiff had any knowledge of Marie's indebtedness to the estate. In Russell v. Davison, 184 Okl. 606, 89 Pac. (2d) 352, 121 A.L.R. 1063, it was held that where a legatee had received property bequeathed to him even prior to probate of will, and although this was not reported to the court and the decree ordered delivery of the property to the legatee, the decree was not conclusive and the prior delivery could be shown in a suit by the legatee against the executor. Such few cases as seem to hold to the contrary, involve what were contended to be advances on a bequest made by the testator prior to death and present an entirely different problem. When the facts are as they are here, it would be contrary, not only to statute, but contrary to common sense, a reversion to the dark ages of the law, and an open invitation to sharp practice to not permit prior payment or delivery of property to be shown.

Respecting the acquisition of Marie's legacy by other parties by subrogation, retainer, assignment, lien, or other method, the law is that the decree of distribution is not binding on a person asserting a right against a distributee, or on a right claimed to have been acquired from him prior to the rendition of the decree, 34 C.J.S. Executors and Administrators section 529, pages 452, 456, and that the decree will not preclude an assignee of a distributee from establishing his rights in an independent proceeding. McGee v. Allen, 7 Cal. (2d) 468, 60 Pac. (2d) 1026; Metzger v. Vestal, 76 Cal. App. 409, 244 Pac. 942. It is pointed out by the Supreme Court of California, in what is one of the leading cases on the subject, Martinovich v. Marsicano, 137 Cal. 354, 356, 70 Pac. 459, that under state constitutional provisions and probate statutes having to do with distribution of estates, identical in all relevant aspects to ours, that a probate court has no authority to determine rights between distributees and other persons not claiming in

their capacities as heirs, devisees, or legatees, in a case such as this one:

"By the constitution of this state the superior court [district court in Montana] is vested with jurisdiction 'of all matters of probate,' [Mont. Const., Art. VIII, Sec. 11], but its exercise of that jurisdiction is regulated by statute * * * 'Matters of probate' include the ascertainment and determination of the persons who succeed to the estate of a decedent, either as heir, devisee, or legatee, as well as the amount or proportion of the estate to which each is entitled, and also the construction or effect to be given to the language of a will; but do not include a determination of claims against the heir or devisee for his portion of the estate arising subsequent to the death of the ancestor, whether such claim arises by virtue of his contract or *in invitum*; nor is the determination of conflicting claims to the estate of an heir or devisee, or whether he has conveyed or assigned his share of the estate a 'matter of probate.' Section 1665, Code Civ. Proc. [R.C.M. 1947, section 91-3901], provides that upon an application for distribution at the close of administration the court must proceed to distribute the residue of the estate 'among the persons who by law are entitled thereto'; and section 1666 [R.C.M. 1947, section 91-3902] declares that in the decree of distribution 'the court must name the persons and the proportions or parts to which each shall be entitled; such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside or modified on appeal.' The decree is conclusive against them 'only so far as they claim in their capacities as heirs, legatees or devisees' (Chever v. Ching Hong Poy, 82 Cal. 68, 22 Pac. 1081) 'only as to the succession or testamentary rights' (In re Burdick, 112 Cal. 387, 44 Pac. 734). In the absence of statutory authority therefor, the superior court, under its jurisdiction of all 'matters of probate,' would have no authority upon the final distribution of a decedent's estate to assign the same, or any portion thereof, to any person other than an heir, devisee, or legatee.''

The court in the Martinovich case just quoted from, then comments that the only statute, providing authority to a court sitting in probate to assign or determine a distributive share to any person other than an heir, devisee, or legatee, is section 1678, Cal. C. Civ. Proc., identical with our R.C.M. 1947, section 91-4004, having to do with partition of real property, and points out that even this section, instead of implying that a distributee takes the share discharged of claims of other persons, clearly indicates that he takes it subject to such claim.

The court in the Martinovich case then has this to say about section 1666, Cal. C. Civ. Proc., which is identical with R.C.M. 1947, section 91-3902, a statute strongly relied upon here by plaintiff on his argument of ''conclusiveness;''

''The provision in section 1666, giving to the distributees the right 'to demand, sue for, and recover their respective rights from the executor or administrator,' is a clear indication that distribution can be made to only those persons who are entitled to receive from the executor or administrator immediate possession of the property distributed to them. Neither in section 1678 nor elsewhere is there any provision authorizing the court to assign a share of the estate to a person who holds a mortgage or judgment lien, or other incumbrance thereon made or suffered by the heir subsequent to the death of the ancestor.''

In another leading California case, Chever v. Ching Hong Poy, 82 Cal. 68, 71, 22 Pac. 1081, 1082, construing section 1666, Cal. C. Civ. Proc., identical with our section 91-3902, supra, it is said:

''Section 1666, Code Civil Proc., provides that a decree of distribution 'is conclusive as to the rights of heirs, legatees, or devisees;' but it is conclusive against them only as heirs, legatees, or devisees,—only so far as they claim in such capacities. The probate court has jurisdiction to determine who are the legal heirs of a deceased person who died intestate, and who are the devisees or legatees of one who died testate; but its determination of such matters does not create any new

title. It merely declares the title which accrued under the law of descents, or under the provisions of the will. *The decree of distribution has nothing to do with contracts or conveyances which may have been made by heirs, devisees, or legatees, of or about their shares of the estate, either among themselves or with others. Such matters are not before the probate court, and over them it has no jurisdiction."* Emphasis supplied.

Under the authorities and for the reaons given, it cannot be maintained that Marie herself would be entitled to any of the legacy bequeathed to her by her mother as against the appellants. Neither is the plaintiff under the authorities. Any defense or set-off by the executors or appellants against the legatee would be equally valid against her judgment debtor. Stanley v. United States National Bank, supra; Doering v. Doering, 42 Ch. D. (Eng.) 246; 1 A.L.R. 991, and subrogation as an equitable defense may be pleaded to a cause of action at law. Potter v. Lohse, 31 Mont. 91, 77 Pac. 419.

It appearing to be a proper case therefor, the judgment is reversed and the cause remanded to the district court with instructions to dismiss the proceedings. Costs to be borne by the plaintiff.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES, ANGSTMAN and ADAIR, concur.